James M. Walsh, Esq.
Nevada State Bar 796
Walsh, Baker, Rosevear & Loomis P.C.
9468 Double R. Blvd., Suite A
Reno, Nevada  89521
775.853.0883 telephone
775.853.0860 facsimile
jmwalsh@wbrl.net
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PORT OF SUBS, INC., a Nevada corporation,<br><br>Plaintiff,<br>vs.<br><br>NATIONAL FIRE INSURANCE COMPANY OF HARTFORD; and CNA FINANCIAL CORPORATION,<br><br>Defendants. | Case No.:<br><br><br><br>**COMPLAINT FOR DECLARATORY RELIEF 28 U.S.C. § 2201 et. seq.** |

COMES NOW, Plaintiff, PORT OF SUBS, INC., a Nevada corporation, by and through its counsel, James M. Walsh, Esq. of Walsh, Baker, Rosevear & Loomis, PC, as and for its Complaint against Defendants avers and alleges as follows:

### NATURE OF THE ACTION

1.      PORT OF SUBS, INC. (hereinafter referred to as "POS") brings this action to obtain a judicial declaration as to its rights and liabilities under a policy of liability insurance issued by CNA Financial Services, Inc. (hereinafter referred to as "CNA") for and on behalf of National Fire Insurance Company of Hartford (hereinafter referred to as "NFICH") as Policy No. 2099374922 with the effective dates of January 18, 2013 – January 18, 2014.  A true and correct copy is attached hereto as **Exhibit 1**.

2.      In particular POS seeks a judicial declaration of its rights under the policy with respect to Case No. CV14-01778, filed in the Second Judicial District Court of the State of Nevada, in and for

1

the County of Washoe entitled Laura Ogaldez, et al., vs. Port of Subs, Inc., et al.  A true and correct copy of said Complaint is attached hereto as **Exhibit 2**.

3.      An actual ripe and judicial controversy has arisen between the parties in regard to the respective rights and obligations under the policy in connection with the claims asserted and the reliefs sought in the Ogaldez action.

## PARTIES

4.      Defendant NFICH is an Illinois corporation with its principal place of business in the state of Illinois, and is authorized to transact insurance business under the laws of the State of Nevada.

5.      Defendant CNA is either a parent issuing agent or agent acting on behalf of NFICH and is also an Illinois corporation in good standing.

6.      Plaintiff POS is a Nevada corporation in good standing conducting business as a franchisor and operator of food service operations in the state of Nevada and other western states.

## JURISDICTION AND VENUE

7.      This is an action for declaratory relief brought under the Federal Declaratory Judgment Act 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Rules of Civil Procedure, seeking the adjudication of an actual, ripe and judicial controversy that has arisen between the parties as described herein.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between the adversary parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C.  § 1391(b)(1)(2), as all or a substantial part of the events, acts and/or admissions giving rise to the claims at issue in this action and the underlying action occurred in this judicial district and specifically the informal Northern District, the District of Nevada, and all individual defendants have their place of business or have transacted business in this judicial district.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

2

10.     Laura Ogaldez, individually and as Special Administratrix of the Estate of Fermin Ogaldez, Robert Ogaldez and Daniel Ogaldez filed her action against Port of Subs, Inc. and Richard Eugene Williams on August 15, 2014.

11.     The Ogaldez Complaint alleges that Defendant Richard Eugene Williams (hereinafter referred to as "Williams") on August 3, 2013, was operating his personal motor vehicle and while leaving the premises of the Grand Sierra Resort and Casino located in Reno, Nevada, at the intersection of Mill Street did operate his vehicle in such a manner as to impact a motorcycle ridden by Fermin Ogaldez, and that as a result of the accident, Mr. Ogaldez suffered severe personal injuries which lead to his death.

12.     Ogaldez further alleges that Williams was an employee of POS, and further that Williams was in the course and scope of his employment at the time of the accident.

13.     POS has admitted that Williams is and was an employee of POS, but denies that he was in the course and scope of his employment at the time of the accident.

14.     Ogaldez has alleged six claims for relief against Williams and POS.  Those being: 1) Negligence; 2) Negligence Per Se; 3) Negligent Infliction of Emotional Distress; 4) Intentional Infliction of Emotional Distress; 5) Assault; and 6) Battery.

15.     POS was served with the Summons and Complaint and tendered defense of the matter to CNA and NFICH pursuant to the provisions of Policy No. 2099374922.

16.     On or about August 26, 2014, Claims Consultant Mitch Roberts, an employee of CNA on behalf of CNA and NFICH, did accept the defense of the Ogaldez claims; however citing an exclusion for intentional injury, CNA/NFICH reserved its rights to deny coverage for punitive exemplary and intentionally caused damages.  A true and correct copy of the Roberts letter of August 26, 2014 is attached hereto as **Exhibit 3**.

17.     In the Roberts letter of August 26, 2014, CNA/NFICH invited POS to obtain its own counsel on the potentially uncovered claims at the expense of POS.

18.     The reservation of rights on behalf of CNA and NFICH creates a conflict of interest by and between POS and NFICH and CNA and the retained counsel.

3

19.     On September 8, 2014, counsel for POS made demand upon Roberts, NFICH and CNA that POS be provided what is termed *Cumis* counsel pursuant to the holding of the *San Diego Federal Credit Union vs. Cumis Ins. Society, Inc.*, 162 Cal. App. 3d 358, 364 (1984); the ruling of the Hon. Miranda M. Du of the United States District Court, District of Nevada in *Hansen v. State Farm Mutual Insurance Company*, Case No. 2:10-cv-01434-MMD-RJJ filed December 12, 2012, and the Nevada Supreme Court's holding in *Yellow Cab Corp. v. Eight Judicial Dist. Court ex. rel.*, 123 Nev. 44, 49, 152 P.3d 737, 742-43 (2007).

20.     The basis of these decisions and the demand of POS is that the reservation of rights under the factual situations as alleged in the Ogaldez Complaint creates an irreconcilable conflict of interest between POS and NFICH as to the conduct of the defense of the Ogaldez claims.  Therefore, POS is entitled to separate counsel to be provided to it at the expense of NFICH.  A true and correct copy of the demand letter for *Cumis* counsel dated September 8, 2014 to CNA, NFICH and Roberts is attached hereto as **Exhibit 4**.

21.     On September 10, 2014, Roberts, on behalf of CNA and NFICH denied POS's request for *Cumis* counsel stating it was their belief that they saw no way in which the case can be handled by defense counsel which could affect whether the verdict against POS is covered or not.

22.     The position of CNA/NFICH and their interpretation of *Cumis* and Nevada law are contrary to the holding in *Cumis,* the decision of Judge Du and the likely ruling of the Nevada Supreme Court on this issue.  A true and correct copy of Roberts' denial letter of September 10, 2014 is attached hereto as **Exhibit 5**.

23.     Although the Ogaldez action remains pending and NFICH is continuing to defend POS, the interpretation of the policy provisions under which Defendants have reserved their rights in denying POS *Cumis* counsel and the resulting controversy are ripe for adjudication and a judicial declaration regarding the parties' respective rights and obligations under the policy is appropriate.

24.     A true and justiciable controversy exists between POS and CNA/NFICH in that POS contends that pursuant to the *Cumis* case and the law as would be adopted in the state of Nevada, it is entitled to independent counsel at the expense of CNA/NFICH.  CNA/NFICH denies the existence of

4

any true conflict of interests and contends that it has no obligation to its insured, POS, to provide it with independent counsel.

25.     POS contends that the actions of CNA and NFICH are a breach of the terms and conditions of that policy of insurance and that POS is entitled to compensation of its attorney's fees as a result of said breach.

WHEREFORE, POS prays for judgment as follows:

1.     For a judicial declaration that CNA and NFICH are obligated to provide POS with independent "*Cumis*" counsel at the expense of CNA and NFICH for defense of the reserved claims in the underlying Ogaldez action;

2.     For costs of the suit herein incurred;

3.     For attorney's fees; and

4.     For such other and further relief as the Court may deem proper.

**Affirmation Pursuant to NRS 239B.030**

The undersigned does hereby affirm that the preceding document does not contain the social security number of any person.

DATED this 7th day of November, 2014.

**WALSH, BAKER, ROSEVEAR & LOOMIS, PC**

James M. Walsh, Esq.
Nevada State Bar 796
9468 Double R. Blvd., Suite A
Reno, Nevada  89521
775.853.0883 telephone
775.853.0860 facsimile
Attorney for Plaintiff

## INDEX OF EXHIBITS

| EX. NO. | DESCRIPTION | PAGES |
|---------|-------------|-------|
| 1 | National Fire Insurance Company of Hartford Insurance Policy Number 2099374922 | 69 |
| 2 | Complaint: Ogaldez v. Port of Subs, Case No. CV14-01778 | 12 |
| 3 | Mitch Roberts Claims Counsel, CNA letter dated August 26, 2014 to Port of Subs, Inc. | 3 |
| 4 | James M. Walsh September 8, 2014 letter to Mitch Roberts Claims Counsel, CNA | 22 |
| 5 | Mitch Roberts Claims Counsel, CNA September 10, 2014 letter to James M. Walsh | 4 |

# EXHIBIT 1

# EXHIBIT 1



**Business Auto**

**Renewal Declaration**

| | | |
|---|---|---|
| **POLICY NUMBER**<br>P 2099374922 | **COVERAGE PROVIDED BY**<br>NATIONAL FIRE INSURANCE OF HARTFORD<br>333 S. WABASH<br>CHICAGO, IL. 60604 | **FROM - POLICY PERIOD - TO**<br>01/18/2013   01/18/2014 |
| | **INSURED NAME AND ADDRESS**<br>PORT OF SUBS, INC.<br>5365 MAE ANNE AVE STE A29<br>RENO, NV 89523 | |
| **AGENCY NUMBER**<br>080507 | **AGENCY NAME AND ADDRESS**<br>WELLS FARGO INSURANCE SRVCS USA, INC<br>604 W MOANA LN<br>RENO, NV 89509<br>Phone Number: (775)827-1555 | |
| **BRANCH NUMBER**<br>540 | **BRANCH NAME AND ADDRESS**<br>DENVER BRANCH OFFICE<br>CNA<br>10375 PARK MEADOWS DR. #300<br>LITTLETON, CO 80124<br>Phone Number: (303)858-4100 | |

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing
address on the dates shown above.

The Named Insured is a Corporation.
Your policy is composed of this Declarations, with the attached Common Policy Conditions,
Coverage Forms, and Endorsements, if any. The Policy Forms and Endorsement Schedule shows
all forms applicable to this policy at the time of policy issuance.

The Estimated Policy Premium is        $9,066.00

Audit Period is Not Auditable



In return for the payment of the premium, and subject to all the terms and conditions
contained here-in, we agree to provide the insurance as stated.

POLICY NUMBER **INSURED NAME AND ADDRESS**
P 2099374922                      PORT OF SUBS, INC.
                                  5365 MAE ANNE AVE STE A29
                                  RENO, NV  89523

## ITEM TWO
### Schedule Of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium
column below.  Each of these coverages will apply only to those "autos" shown as
covered "autos".  "Autos" are shown as covered "autos" for a particular coverage by the
entry of one or more of the symbols from the Covered Auto Section of the Business Auto
Coverage Form next to the name of the Coverage.

| COVERAGES | COVERED AUTO SYMBOL | LIMIT | PREMIUM |
|---|---|---|---|
| Liability | 1 | $1,000,000 | $5,786 |
| Personal Injury Protection (Or Equivalent No-Fault Coverage) | | Separately Stated In Each Personal Injury Protection Endorsement. | |
| Added Personal Injury Protection (Or Equivalent Added No-Fault Coverage) | | Separately Stated in Each Added Personal Injury Protection Endorsement. | |
| Property Protection Insurance (Michigan Only) | | Separately Stated In The Property Protection Insurance Endorsement. | |
| Auto Medical Payments | 2 | $5,000 | $213 |
| Medical Expense and Income Loss Benefits (Virginia Only) | | Separately Stated in The Medical Expense and Income Benefits Endorsement. | |
| Uninsured Motorists | 2 | See Endorsement | $1,510 |
| Underinsured Motorists (When Not Included In Uninsured Motorist Coverage) | | | |

**POLICY NUMBER**    **NAMED INSURED AND ADDRESS**
P 2099374922    PORT OF SUBS, INC.
         5365 MAE ANNE AVE STE A29
         RENO, NV  89523

**ITEM TWO**
**Schedule Of Coverages and Covered Autos (Cont'd)**

| COVERAGES | COVERED AUTO SYMBOL | LIMIT | PREMIUM |
|---|---|---|---|
| Physical Damage Comprehensive Coverage | 7, 8 | Actual Cash Value or Cost Of Repair, Whichever is Less, Minus $250 Deductible for Each Covered Auto, But no Deductible Applies to Loss Caused By Fire Or Lightning. See Item Four For Hired or Borrowed Autos. | $435 |
| Physical Damage Specified Causes of Loss Coverage | | Actual Cash Value or Cost Of Repair, Whichever is Less, Minus Deductible for Each Covered Auto For Loss Caused By Mischief Or Vandalism. See Item Four For Hired or Borrowed Autos. | |
| Physical Damage Collision Coverage | 7, 8 | Actual Cash Value or Cost Of Repair, Whichever Is Less, Minus $500 Deductible for Each Covered  Auto. See Item Four For Hired or Borrowed Autos. | $874 |
| Physical Damage Towing and Labor | | For Each Disablement of A Private Passenger Auto. | |

**Premium for Endorsement:**     $248

**Estimated Total Premium:**     $8,818.00



PORT OF SUBS, INC.
5365 MAE ANNE AVE STE A29
RENO, NV 89523

**ITEM THREE: Scheduled Of Covered Autos You Own**
Except for Towing, All Physical Damage Loss Is Payable To You And Any Loss Payee Named On
the Commercial Automobile Schedule For The Covered Auto Number At The Time Of the Loss

For The Coverages Shown for Each Covered Auto, Absence of a deductible or limit entry in
any column means that the limit or deductible entry in the corresponding Item Two column
applies instead.

| Vehicle Number | State | Territory | Model Year | Description | Serial Number | Cost New | Class Code |
|---|---|---|---|---|---|---|---|
| 1 | NV | 111 | 2003 | TOYOTA 4 RUNNER | JTEBU14R330014860 | 33,000 | 7398 |
| 2 | NV | 109 | 2004 | GMC SAVANA G2500 | 1GTGG25U641135842 | 23,375 | 02499 |
| 3 | NV | 111 | 2002 | GMC SAVANA G2500 | 1GTGG29RX21101289 | 23,063 | 01499 |
| 4 | NV | 111 | 2004 | CADILLAC ESCALADE LU | 1GYEK63N34R274928 | 54,880 | 7398 |
| 5 | NV | 111 | 2011 | TOYOTA 4RUNNER SR5/L | JTEBU5JR0B5035744 | 33,200 | 7398 |
| 6 | NV | 111 | 2008 | LEXUS GX 470 | JTJBT20X580171053 | 46,815 | 7398 |
| 7 | NV | 111 | 1995 | AZCA TRAILER | 4PSUE1628SL010023 | | 68499 |

### PREMIUMS-LIMITS AND DEDUCTIBLES

| Vehicle Number | Liability Premium | PIP Premium | Added PIP Premium | PPI (Michigan) Premium | Medical Limit | Payments Premium | Uninsured Motorists Premium | Underinsured Motorists Premium |
|---|---|---|---|---|---|---|---|---|
| 1 | 589 | | | | 5,000 | 23 | 283 | |
| 2 | 1,805 | | | | 5,000 | 85 | 189 | |
| 3 | 537 | | | | 5,000 | 36 | 189 | |
| 4 | 589 | | | | 5,000 | 23 | 283 | |
| 5 | 589 | | | | 5,000 | 23 | 283 | |
| 6 | 589 | | | | 5,000 | 23 | 283 | |
| 7 | 57 | | | | | | | |

| Vehicle Number | Medical Expense Income Loss (VA) Premium | Specified Cause of Loss Premium | Comprehensive Deduct | Comprehensive Premium | Collision Deduct | Collision Premium | Towing & Labor Premium | Total Vehicle Premium |
|---|---|---|---|---|---|---|---|---|
| 1 | | | 250 | 41 | 500 | 117 | | 1,053 |
| 2 | | | 250 | 53 | 500 | 92 | | 2,224 |
| 3 | | | 250 | 29 | 500 | 51 | | 842 |
| 4 | | | 250 | 57 | 500 | 147 | | 1,099 |
| 5 | | | 250 | 75 | 500 | 246 | | 1,216 |
| 6 | | | 250 | 80 | 500 | 221 | | 1,196 |
| 7 | | | | | | | | 57 |

POLICY NUMBER      INSURED'S NAME AND ADDRESS
P 2099374922      PORT OF SUBS, INC.
                5365 MAE ANNE AVE STE A29
                RENO, NV 89523

**ITEM FOUR: SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

**LIABILITY COVERAGE - COST OF HIRE RATING BASIS**
**(OTHER THAN MOBILE OR FARM EQUIPMENT)**

| STATES | LIABILITY COVERAGE | ESTIMATED COST OF HIRE FOR ALL STATES | PREMIUM |
|---|---|---|---|
| NV CA ID | Excess Coverage | IF ANY | $273 * |
| | | Total Premium | $273 |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not
including 'autos' you borrow or rent from your partners or "employees" or their family
members). Cost of hire does not include charges for services performed by motor carriers
of property or passengers.



POLICY NUMBER          NAMED AND ADDRESS
P 2099374922           PORT OF SUBS, INC.
                       5365 MAE ANNE AVE STE A29
                       RENO, NV  89523

**ITEM FOUR:**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

**PHYSICAL DAMAGE COVERAGE - COST OF HIRE RATING BASIS FOR ALL AUTOS
(OTHER THAN MOBILE OR FARM EQUIPMENT)**

**COVERAGES**                                          **LIMIT OF INSURANCE**

**Comprehensive**      Actual Cash Value or Cost of Repair, Whichever is Less,
                       Minus Deductible Shown Below for Each Covered Auto, But No
                       Deductible Applies to Loss Caused By Fire or Lightning.

| STATES | DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | PREMIUM |
|--------|-----------|-------------------------------|---------|
| CA ID NV | $100 | IF ANY | $100  * |

**Specified
Cause of Loss**        Actual Cash Value or Cost of Repair, Whichever is Less,
                       Minus Deductible Shown Below for Each Covered Auto For
                       Loss Caused By Mischief or Vandalism.

| STATES | DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | PREMIUM |
|--------|-----------|-------------------------------|---------|
|        |           |                               |         |

**Collision**          Actual Cash Value or Cost of Repair, Whichever is Less,
                       Minus Deductible Shown Below for Each Covered Auto.

| STATES | DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | PREMIUM |
|--------|-----------|-------------------------------|---------|
| NV CA ID | $500 | IF ANY | Included |

                                        **TOTAL PREMIUM:**     $100

***Hired Auto Minimum Premium

For Physical Damage coverages, cost of hire means the total amount you incur for the hire
of "autos" you don't own (not including "autos" you borrow or rent from your partners or
"employees" or their family members).  Cost of hire does not include charges for any
"auto" that is leased, hired, rented or borrowed with a driver.

**POLICY NUMBER**
P 2099374922

**NAMED INSURED AND ADDRESS**
PORT OF SUBS, INC.
5365 MAE ANNE AVE STE A29
RENO, NV 89523

**ITEM FIVE: SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| NAMED INSURED'S BUSINESS | RATING BASIS | NUMBER | PREMIUM |
|---|---|---|---|
| Other Than Garage Service Operations And Other Than Social Service Agencies | Number of Employees | 223 | $758 |
| | Number of Partners (Active and Inactive) | | |
| Garage Service Operations | Number of Employees Whose Principal Duty Involves The Operations of Autos | | |
| | Number of Partners (Active and Inactive) | | |
| Social Service Agencies | Number of Employees | | |
| | Number Volunteers Who Regularly Use Autos To Transport Clients | | |
| | Number of Partners (Active and Inactive) | | |

Total Premiums: $758



INSURED                                    Page 7 of 11

POLICY NUMBER:  NAMED AND ADDRESS
P 2099374922          PORT OF SUBS, INC.
                      5365 MAE ANNE AVE STE A29
                      RENO, NV  89523

ITEM SIX:   SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS
            LIABILITY COVERAGE - PUBLIC AUTO OR LEASING RENTAL CONCERNS


Address of Business Headquarters Location:


TYPE OF RISK (CHECK ONE):  [ ] Public Autos              [ ] Leasing Or Rental Concerns
RATING BASIS (CHECK ONE):  [ ] Gross Receipts (Per $100)  [ ] Mileage (Per Mile)

Estimated Yearly (Gross Receipts Or Mileage):

                              **PREMIUMS**

|  |  |  |  |
|---|---|---|---|
| Liability | Personal Injury Protection | Added Personal Injury Protection | Property Protection Insurance (Michigan Only) |
| Auto Medical Payments | Medical Expense And Income Loss Benefits (Virginia Only) | Comprehensive | Specifed Causes of Loss |
| | Collision | Towing And Labor | |


When used as a premium basis;

**FOR PUBLIC AUTOS**
Gross receipts means the total amount earned by the named insured for transporting
passengers, mail and merchandise.

Gross receipts does not include:
   A. Amounts paid to air, sea or land carriers operating under their own permits.
   B. Advertising Revenue.
   C. Taxes collected as a separate item and paid directly to the government.
   D. C.O.D. collections for cost of mail or merchandise including collection fees.
Mileage means the total live and dead mileage of all revenue producing "autos" during the
policy period.

**FOR RENTAL OR LEASING CONCERNS**
Gross Receipts means the total amount earned by the named insured for the leasing or
renting of "autos" to others without drivers.

Mileage means the total live and dead mileage of all "autos" you leased or rented to
others without drivers.

**POLICY NUMBER**            **NAMED INSURED AND ADDRESS**
P 2099374922                 PORT OF SUBS, INC.
                             5365 MAE ANNE AVE STE A29
                             RENO, NV  89523

<u>**COMMERCIAL AUTOMOBILE LOSS PAYEE SCHEDULE**</u>

**"Any Loss Payee that has a financial interest in a covered "auto" for which we are
providing physical damage coverage for that covered "auto" under this policy."**



**POLICY NUMBER**             **INSURED NAME AND ADDRESS**
P 2099374922                  PORT OF SUBS, INC.
                              5365 MAE ANNE AVE STE A29
                              RENO, NV  89523

## ADDITIONAL INSURED - LESSOR SCHEDULE

"Any Lessor of a covered "auto" for which we are providing any coverage for that
covered "auto" under this policy."

POLICY NUMBER                    NAMED INSURED AND ADDRESS
P 2099374922                    PORT OF SUBS, INC.
                                5365 MAE ANNE AVE STE A29
                                RENO, NV  89523

## FORMS AND ENDORSEMENTS SCHEDULE

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| CA0001 | 03/2010 | Business Auto Coverage Form |
| CA0118 | 11/2000 | Idaho Changes |
| CA0136 | 03/2010 | Nevada Changes |
| CA0143 | 05/2005 | California Changes |
| CA2001 | 03/2006 | Additional Insured - Lessor |
| CA2054 | 10/2001 | Employee Hired Autos |
| CA2127 | 06/2008 | Nevada Uninsured Motorists Coverage |
| CA9903 | 03/2006 | Auto Medical Payments Coverage |
| CA9910 | 03/2010 | Drive Other Car Broadened Coverage for Named Indiv |
| CA9944 | 12/1993 | Loss Payable Clause |
| G144291A | 03/2003 | Economic And Trade Sanctions Condition |
| G147190B | 12/2010 | Named Driver Exclusion |
| IL0003 | 09/2007 | Calculation of Premium |
| IL0017 | 11/1998 | Common Policy Conditions |
| IL0021 | 04/1998 | Nuclear Energy Liab Exclusion Endt (Broad Form) |
| IL0110 | 09/2007 | Nevada Changes-Concealment, Misrepresentation or F |
| IL0115 | 01/2010 | Nevada Changes Domestic Partnership |
| IL0251 | 09/2007 | Nevada Changes - Cancellation And Nonrenewal |

### *** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY ***

| FORM NUMBER | | FORM TITLE |
|---|---|---|
| G142630A | 05/2002 | Imp. Info.- For Our Commercial Auto Policyholders |
| G145041A | 05/2003 | IMP INF Economic And Trade Sanctions Condition |

Countersignature

Thomas F. Motamed
Chairman of the Board

Jonathan Kantor
Secretary

P-55748-B  (Ed. 12/90)                    INSURED                    Page  11 of  11

COMMERCIAL AUTO
CA 00 01 03 10

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees," partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees," partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

Copyright Insurance Services Office, Inc., 2009



| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|----|----|

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto."

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos." However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident."

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto."

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto."

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

 Copyright Insurance Services Office, Inc., 2009 CA 00 01 03 10

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees," partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees," while moving property to or from a covered "auto."

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured."

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract." For the purposes of the coverage form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured."

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto."

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Copyright Insurance Services Office, Inc., 2009

CA 00 01 03 10

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

   **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury," "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment."

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.



 Copyright Insurance Services Office, Inc., 2009

All "bodily injury," "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto."

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto," we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss."

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

   (3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto."

   However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

### B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

Copyright Insurance Services Office, Inc., 2009

**b. War Or Military Action**

    **(1)** War, including undeclared or civil war;

    **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

    **a.** Wear and tear, freezing, mechanical or electrical breakdown.

    **b.** Blowouts, punctures or other road damage to tires.

    This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto."

**4.** We will not pay for "loss" to any of the following:

    **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

    **b.** Any device designed or used to detect speed-measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed-measurement equipment.

    **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

    **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss," is:

    **a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value."

**C. Limit Of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

    **a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

    **b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** $1,000 is the most we will pay for "loss" in any one "accident" to all electronic equipment that reproduces, receives or transmits audio, visual or data signals which, at the time of "loss," is:

    **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

    **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above or is an integral part of that equipment; or

    **c.** An integral part of such equipment.

**3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss."

**4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

#### 1. Appraisal For Physical Damage Loss

If you and we disagree on the amount of "loss," either may demand an appraisal of the "loss." In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

#### 2. Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the "accident" or "loss." Include:

   **(1)** How, when and where the "accident" or "loss" occurred;

   **(2)** The "insured's" name and address; and

   **(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

   **(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   **(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit."

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit."

   **(4)** Authorize us to obtain medical records or other pertinent information.

   **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

   **(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

   **(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

   **(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

   **(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

#### 3. Legal Action Against Us

No one may bring a legal action against us under this coverage form until:

**a.** There has been full compliance with all the terms of this coverage form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

#### 4. Loss Payment – Physical Damage Coverages

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss," our payment will include the applicable sales tax for the damaged or stolen property.

#### 5. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this coverage form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

Copyright Insurance Services Office, Inc., 2009

CA 00 01 03 10

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this coverage form.

### 2. Concealment, Misrepresentation Or Fraud

This coverage form is void in any case of fraud by you at any time as it relates to this coverage form. It is also void if you or any other "insured," at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This coverage form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this coverage form.

### 3. Liberalization

If we revise this coverage form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this coverage form.

### 5. Other Insurance

**a.** For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this coverage form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto."

**c.** Regardless of the provisions of Paragraph **a.** above, this coverage form's Liability Coverage is primary for any liability assumed under an "insured contract."

**d.** When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

### 6. Premium Audit

**a.** The estimated premium for this coverage form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this coverage form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

### 7. Policy Period, Coverage Territory

Under this coverage form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if:

**(a)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(b)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada or in a settlement we agree to.



Copyright Insurance Services Office, Inc., 2009

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this coverage form and any other coverage form or policy issued to you by us or any company affiliated with us applies to the same "accident," the aggregate maximum Limit of Insurance under all the coverage forms or policies shall not exceed the highest applicable Limit of Insurance under any one coverage form or policy. This condition does not apply to any coverage form or policy issued by us or an affiliated company specifically to apply as excess insurance over this coverage form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury," "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment."

     Copyright Insurance Services Office, Inc., 2009     CA 00 01 03 10

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss."

**F.** "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees," of any "auto." However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees."

An "insured contract" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **a.** Power cranes, shovels, loaders, diggers or drills; or

   **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   **b.** Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **a.** Equipment designed primarily for:

        **(1)** Snow removal;

        **(2)** Road maintenance, but not construction or resurfacing; or

        **(3)** Street cleaning;

    **b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense";

to which this insurance applies, are alleged.

"Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

Copyright Insurance Services Office, Inc., 2009

CA 00 01 03 10

COMMERCIAL AUTO
CA 01 18 11 00

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# IDAHO CHANGES

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Idaho, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto and Garage Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carriers Coverage Forms are revised by the addition of the following:

1. When this coverage form and any other coverage form or policy providing liability insurance apply to a "loaned vehicle" and:

   a. One provides coverage to a licensed seller or dealer; and

   b. The other provides coverage to a person not engaged in that business; and

   c. At the time of an "accident" a person covered by a coverage form described in Paragraph **1.b.** is operating a "loaned vehicle" owned by

the business described in Paragraph **1.a.**, then that person's liability insurance is primary and the policy issued to a business described in Paragraph **1.a.** is excess over any insurance available to that person.

**B. Additional Definitions**

As used in this endorsement:

"Loaned vehicle" means a motor vehicle which is provided for temporary use without charge to the operator by a licensed seller or dealer for the purpose of demonstrating the vehicle to the operator as a prospective purchaser, or as a convenience to the operator during the repairing or servicing of a motor vehicle for the operator, regardless of whether such repair or service is performed by the owner of the loaned vehicles or by some other person or business.



COMMERCIAL AUTO
CA 01 36 03 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**I. Changes In Conditions**

**A.** For a covered "auto" licensed in, or "garage operations" conducted in, Nevada, the **Other Insurance** Condition is changed by adding the following:

   **1.** When two coverage forms providing liability coverage apply to an "auto" and:

      **a.** One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing "autos"; and

      **b.** The other provides coverage to a person not engaged in that business; and

      **c.** At the time of an "accident," a person described in **1.b.** is operating the "auto"; then

   that person's liability insurance is primary and the coverage form issued to a business described in **1.a.** is excess over any insurance available to that person.

   **2.** When two coverage forms providing liability coverage apply to an "auto" and:

      **a.** One provides coverage to a Named Insured engaged in the business of repairing or servicing "autos"; and

      **b.** The other provides coverage to a person not engaged in that business; and

      **c.** At the time of an "accident," a person described in **2.b.** is operating an "auto" owned by the business described in **2.a.** as a temporary substitute auto while that person's "auto" is being repaired or serviced by the business described in **2.a.**; then

that person's liability coverage is primary and the coverage form issued to the business described in **2.a.** is excess over any insurance available to that person.

**B.** The **Transfer Of Rights Of Recovery Against Others To Us** Condition is amended as follows:

The **Transfer Of Rights Of Recovery Against Others To Us** Condition does not apply to Medical Payments.

**II. Anti-stacking Provisions**

The contrasting type contained in this endorsement is in compliance with Nevada statutory requirements that anti-stacking provisions be prominently displayed in the policy, binder or endorsement.

**A.** Exclusions **2.** and **3.** in the Auto Medical Payments Coverage Endorsement are replaced by the following:

   **2.** "BODILY INJURY" SUSTAINED BY YOU OR ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR STRUCK BY ANY VEHICLE (OTHER THAN A COVERED "AUTO") OWNED BY YOU OR FURNISHED OR AVAILABLE FOR YOUR REGULAR USE.

   **3.** "BODILY INJURY" SUSTAINED BY ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR STRUCK BY ANY VEHICLE (OTHER THAN A COVERED "AUTO") OWNED BY OR FURNISHED OR AVAILABLE FOR THE REGULAR USE OF ANY "FAMILY MEMBER."



**B.** The first paragraph of the **Limit Of Insurance** Provision in **Section II – Liability Coverage** in the Business Auto Coverage Form, Motor Carrier Coverage Form and Truckers Coverage Form is replaced by the following:

**LIMIT OF INSURANCE**

REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT," THE MOST WE WILL PAY FOR THE TOTAL OF ALL DAMAGES AND "COVERED POLLUTION COST OR EXPENSE" COMBINED, RESULTING FROM ANY ONE "ACCIDENT" IS THE LIMIT OF INSURANCE FOR LIABILITY COVERAGE SHOWN IN THE DECLARATIONS.

**C.** The first four paragraphs of the **Aggregate Limit Of Insurance – "Garage Operations" – Other Than Covered "Autos"** Provision in **Section II – Liability Coverage** in the Garage Coverage Form are replaced by the following:

1. **AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS"**

   FOR "GARAGE OPERATIONS" OTHER THAN THE OWNERSHIP, MAINTENANCE OR USE OF COVERED "AUTOS," THE FOLLOWING APPLIES:

   REGARDLESS OF THE NUMBER OF "INSUREDS," CLAIMS MADE OR "SUITS" BROUGHT OR PERSONS OR ORGANIZATIONS MAKING CLAIMS OR BRINGING "SUITS," THE MOST WE WILL PAY FOR THE SUM OF ALL DAMAGES INVOLVING "GARAGE OPERATIONS" OTHER THAN COVERED "AUTOS" IS THE AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS" FOR LIABILITY COVERAGE SHOWN IN THE DECLARATIONS.

DAMAGES PAYABLE UNDER THE AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS" CONSIST OF DAMAGES RESULTING FROM "GARAGE OPERATIONS," OTHER THAN THE OWNERSHIP, MAINTENANCE OR USE OF THE "AUTOS" INDICATED IN SECTION I OF THIS COVERAGE FORM AS COVERED "AUTOS," INCLUDING THE FOLLOWING COVERAGES, IF PROVIDED BY ENDORSEMENT:

a. "PERSONAL INJURY" LIABILITY COVERAGE;

b. "PERSONAL AND ADVERTISING INJURY" LIABILITY COVERAGE;

c. HOST LIQUOR LIABILITY COVERAGE;

d. DAMAGE TO RENTED PREMISES LIABILITY COVERAGE;

e. INCIDENTAL MEDICAL MALPRACTICE LIABILITY COVERAGE;

f. NON-OWNED WATERCRAFT COVERAGE;

g. BROAD FORM PRODUCTS COVERAGE.

DAMAGES PAYABLE UNDER THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS" ARE NOT PAYABLE UNDER THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – COVERED "AUTOS."

SUBJECT TO THE ABOVE, THE MOST WE WILL PAY FOR ALL DAMAGES RESULTING FROM ALL "BODILY INJURY" AND "PROPERTY DAMAGE" RESULTING FROM ANY ONE "ACCIDENT" IS THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS" FOR LIABILITY COVERAGE SHOWN IN THE DECLARATIONS.

Copyright, Insurance Services Office, Inc., 2009

CA 01 36 03 10

D. The first two paragraphs of the **Limit Of Insurance – "Garage Operations" – Covered "Autos"** Provision in **Section II – Liability Coverage** in the Garage Coverage Form are replaced by the following:

2. LIMIT OF INSURANCE – "GARAGE OPERATIONS" – COVERED "AUTOS"

FOR "ACCIDENTS" RESULTING FROM "GARAGE OPERATIONS" INVOLVING THE OWNERSHIP, MAINTENANCE OR USE OF COVERED "AUTOS," THE FOLLOWING APPLIES:

REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT," THE MOST WE WILL PAY FOR THE TOTAL OF ALL DAMAGES AND "COVERED POLLUTION COST OR EXPENSE" COMBINED, RESULTING FROM ANY ONE "ACCIDENT" INVOLVING A COVERED "AUTO" IS THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – COVERED "AUTOS" FOR LIABILITY COVERAGE SHOWN IN THE DECLARATIONS.

DAMAGES AND "COVERED POLLUTION COST OR EXPENSE" PAYABLE UNDER THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – COVERED "AUTOS" ARE NOT PAYABLE UNDER THE EACH "ACCIDENT" LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN COVERED "AUTOS."

E. The **Limit Of Insurance** Provision in the Auto Medical Payments Coverage Endorsement is replaced by the following:

LIMIT OF INSURANCE

REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT," THE MOST WE WILL PAY FOR "BODILY INJURY" FOR EACH "INSURED" INJURED IN ANY ONE "ACCIDENT" IS THE LIMIT OF AUTO MEDICAL PAYMENTS SHOWN IN THE DECLARATIONS.

F. Paragraph **1.** of the **Limit Of Insurance And Deductible** Provision in the Garagekeepers Coverage Endorsement is replaced by the following:

LIMIT OF INSURANCE AND DEDUCTIBLE

1. REGARDLESS OF THE NUMBER OF "CUSTOMER'S AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR "SUITS" BROUGHT, THE MOST WE WILL PAY FOR "LOSS" AT EACH LOCATION IS THE GARAGEKEEPERS COVERAGE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE FOR THAT LOCATION. PRIOR TO THE APPLICATION OF THIS LIMIT, THE DAMAGES FOR "LOSS" THAT WOULD OTHERWISE BE PAYABLE WILL BE REDUCED BY THE APPLICABLE DEDUCTIBLES FOR "LOSS" CAUSED BY

a. COLLISION; OR

b. WITH RESPECT TO GARAGEKEEPERS COVERAGE COMPREHENSIVE OR SPECIFIED CAUSES OF LOSS COVERAGE:

(1) THEFT OR MISCHIEF OR VANDALISM; OR

(2) ALL PERILS.

G. The **Limit Of Insurance** Provision in the Transportation Of Seasonal Or Migrant Agricultural Workers Endorsement is replaced by the following:

LIMIT OF INSURANCE

REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT," THE MOST WE WILL PAY FOR ALL DAMAGES RESULTING FROM ANY ONE PERSON CAUSED BY ANY ONE "ACCIDENT" IS THE LIMIT OF INSURANCE SHOWN IN THE SCHEDULE FOR "ACCIDENT."

**H.** The **Limit Of Insurance** Provision in the Garage Locations And Operations Medical Payments Coverage Endorsement is replaced by the following:

**LIMIT OF INSURANCE**

**REGARDLESS OF THE NUMBER OF PERSONS WHO SUSTAIN "BODILY INJURY," PREMIUMS PAID, OR CLAIMS MADE, THE MOST WE WILL PAY FOR "BODILY INJURY" FOR EACH PERSON INJURED IN ANY ONE "ACCIDENT" IS THE LIMIT OF MEDICAL PAYMENTS INSURANCE SHOWN IN THE DECLARATIONS.**

**I.** The following is added to the **Aggregate Limit Of Insurance – "Garage Operations" – Other Than Covered "Autos"** Provision in **Section II – Liability Coverage** for the Personal Injury Liability Coverage – Garages Endorsement:

**SUBJECT TO THE AGGREGATE LIMIT OF INSURANCE – "GARAGE OPERATIONS" – OTHER THAN "AUTO" AND REGARDLESS OF THE NUMBER OF "INSUREDS," CLAIMS MADE OR "SUITS" BROUGHT OR PERSONS OR ORGANIZATIONS MAKING CLAIMS OR BRINGING "SUITS," THE MOST WE WILL PAY FOR ALL DAMAGES BECAUSE OF ALL "PERSONAL INJURY" SUSTAINED BY ANY ONE PERSON OR ORGANIZATION IS THE PERSONAL INJURY LIMIT OF INSURANCE SHOWN IN THE SCHEDULE OF THE PERSONAL INJURY LIABILITY COVERAGE – GARAGES ENDORSEMENT.**

**J.** Paragraph **8.** of **General Conditions** in the Business Auto Coverage Form, Motor Carrier Coverage Form, Truckers Coverage Form and Garage Coverage Form is replaced by the following:

**TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US**

**IF THIS COVERAGE FORM AND ANY OTHER COVERAGE FORM OR POLICY ISSUED TO YOU BY US OR ANY COMPANY AFFILIATED WITH US APPLY TO THE SAME "ACCIDENT," THE AGGREGATE MAXIMUM LIMIT OF INSURANCE UNDER ALL THE COVERAGE FORMS OR POLICIES SHALL NOT EXCEED THE HIGHEST APPLICABLE SINGLE VEHICLE LIMIT OF INSURANCE UNDER ANY ONE COVERAGE FORM OR POLICY REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT." THIS CONDITION DOES NOT APPLY TO ANY COVERAGE FORM OR POLICY ISSUED BY US OR AN AFFILIATED COMPANY SPECIFICALLY TO APPLY AS EXCESS INSURANCE OVER THIS COVERAGE FORM.**

COMMERCIAL AUTO
CA 01 43 05 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

For a covered "auto" licensed or principally garaged in or "garage operations" conducted in California this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

**B.** The **Other Insurance** Condition is changed by adding the following:

**d.** When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

1. One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

2. The other provides coverage to a person not engaged in that business, and

3. At the time of an "accident", a person described in **2.** is operating an "auto" owned by the business described in **1.,** then that person's liability coverage is primary and the Coverage Form issued to a business described in **1.** is excess over any coverage available to that person.

**e.** When this Coverage Form and any other Coverage Form or policy providing liability coverage apply to an "auto" and:

1. One provides coverage to a Named Insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking or storing "autos", and

2. The other provides coverage to a person not engaged in that business, and

3. At the time of an "accident" an "insured" under the Coverage Form described in **1.** is operating an "auto" owned by a person described in **2.,** then the Coverage Form issued to the business described in **1.** is primary and the Liability Coverage issued to a person described in **2.** is excess over any coverage available to the business.



Copyright, ISO Properties, Inc., 2004

POLICY NUMBER:                                                                                    **COMMERCIAL AUTO**
                                                                                                 **CA 20 01 03 06**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR – ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** | |
| **Endorsement Effective Date:** | |
| **Countersignature Of Authorized Representative** | |
| **Name:** | |
| **Title:** | |
| **Signature:** | |
| **Date:** | |

### SCHEDULE

| | |
|---|---|
| **Insurance Company:** | NATIONAL FIRE INSURANCE OF HARTFORD |
| **Policy Number:**  P 2099374922 | **Effective Date:** 01/18/2013 |
| **Expiration Date:**  01/18/2014 | |
| **Named Insured:**  PORT OF SUBS, INC. | |
| **Address:**  5365 MAE ANNE AVE STE A29<br><br>RENO, NV  89523 | |
| **Additional Insured (Lessor):** | |
| **Address:** | |
| **Designation Or Description Of "Leased Autos":** | |





| Coverages | Limit Of Insurance | |
|---|---|---|
| **Liability** | $ | Each "Accident" |
| **Comprehensive** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus | |
| | $ | Deductible For Each Covered "Leased Auto" |
| **Collision** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus | |
| | $ | Deductible For Each Covered "Leased Auto" |
| **Specified Causes Of Loss** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus | |
| | $ | Deductible For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

                    Copyright, ISO Properties, Inc., 2005                    CA 20 01 03 06

**COMMERCIAL AUTO**
CA 20 54 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE HIRED AUTOS

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

The following is added to the **Who Is An Insured** Provision:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

**B. Changes In General Conditions**

Paragraph **5.b.** of the **Other Insurance** Condition in the Business Auto, Business Auto Physical Damage and Garage Coverage Forms, Paragraph **5.d.** of the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Truckers Coverage Form

and Paragraph **5.f.** of the **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**1.** Any covered "auto" you lease, hire, rent or borrow; and

**2.** Any covered "auto" hired or rented by your "employee" under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".



Copyright, ISO Properties, Inc., 2000

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 21 27 06 08**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEVADA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in, Nevada, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

### SCHEDULE

| | |
|---|---|
| **Limit Of Insurance:**   $  1,000,000 | **Each "Accident"** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.




**A. Coverage**

**ANTI-STACKING PROVISIONS**

Any contrasting type contained in this endorsement is in compliance with the Nevada statutory requirements that anti-stacking provisions be prominently displayed in the policy, binder or endorsement.

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

2. With respect to a vehicle as defined in Paragraph **a.** or **b.** of the definition of "uninsured motor vehicle," we will pay damages only in excess of the amount available to an "insured" under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle."

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members."

   **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

**CA 21 27 06 08**                    Copyright, ISO Properties, Inc., 2007                    **Page 1 of 4**

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle."

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **"BODILY INJURY" SUSTAINED BY:**

   **a. AN INDIVIDUAL NAMED INSURED WHILE "OCCUPYING" OR WHEN STRUCK BY ANY VEHICLE OWNED BY THAT NAMED INSURED THAT IS NOT A COVERED "AUTO" FOR UNINSURED MOTORISTS COVERAGE UNDER THIS COVERAGE FORM;**

   **b. ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR WHEN STRUCK BY ANY VEHICLE OWNED BY THAT "FAMILY MEMBER" THAT IS NOT A COVERED "AUTO" FOR UNINSURED MOTORISTS COVERAGE UNDER THIS COVERAGE FORM; OR**

   **c. ANY "FAMILY MEMBER" WHILE "OCCUPYING" OR WHEN STRUCK BY ANY VEHICLE OWNED BY THAT NAMED INSURED THAT IS INSURED FOR UNINSURED MOTORISTS COVERAGE ON A PRIMARY BASIS UNDER ANY OTHER COVERAGE FORM OR POLICY.**

**THIS EXCLUSION APPLIES ONLY TO THE EXTENT THAT THE LIMITS OF LIABILITY FOR THIS COVERAGE EXCEED THE LIMITS OF LIABILITY REQUIRED BY THE NEVADA MOTOR VEHICLE SAFETY RESPONSIBILITY ACT.**

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Any damages to the extent that they are or were available to be paid to an "insured" under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle" as defined in Paragraph **a.** or **b.** of the definition of "uninsured motor vehicle."

6. Punitive or exemplary damages.

7. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. **REGARDLESS OF THE NUMBER OF COVERED "AUTOS," "INSUREDS," PREMIUMS PAID, CLAIMS MADE OR VEHICLES INVOLVED IN THE "ACCIDENT," THE MOST WE WILL PAY FOR ALL DAMAGES RESULTING FROM ANY ONE "ACCIDENT" IS THE LIMIT OF INSURANCE FOR UNINSURED MOTORISTS COVERAGE SHOWN IN THE SCHEDULE OR DECLARATIONS.**

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form or Medical Payments Coverage Endorsement attached to this Coverage Part.

We will not make a duplicate payment under this Coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

Copyright, ISO Properties, Inc., 2007
CA 21 27 06 08

## E. Changes In Conditions

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Business Auto and Garage Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. **THE MAXIMUM RECOVERY UNDER ALL COVERAGE FORMS OR POLICIES COMBINED MAY EQUAL BUT NOT EXCEED THE HIGHEST APPLICABLE LIMIT FOR ANY ONE VEHICLE UNDER ANY COVERAGE FORMS OR POLICY PROVIDING COVERAGE ON EITHER A PRIMARY OR EXCESS BASIS.**

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved; and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is replaced by the following:

   a. If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them. However, with respect to an underinsured motor vehicle as defined in Paragraph b. of the definition of "uninsured motor vehicle," this Condition does not apply.

   b. If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. The following Condition is added:

   **ARBITRATION**

   a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, the "insured" may make a written demand for arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision of the arbitrators will not be binding on the "insured."

## F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

Copyright, ISO Properties, Inc., 2007

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" to which a liability bond or policy applies at the time of the "accident," but the amount paid under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured," a covered "auto" or a vehicle an "insured" is "occupying."

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except:

      (1) A self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

      (2) A vehicle(s) owned by a governmental unit or agency.

   b. Designed for use mainly off public roads while not on public roads.

   Copyright, ISO Properties, Inc., 2007   CA 21 27 06 08

COMMERCIAL AUTO
CA 99 03 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

### A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident." We will pay only those expenses incurred, for services rendered within three years from the date of the "accident."

### B. Who Is An Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto."

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

### C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member."

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a

person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

### D. Limit Of Insurance

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes In Conditions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance – Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Copyright, ISO Properties, Inc., 2005
CA 99 03 03 06

POLICY NUMBER:

**COMMERCIAL AUTO**
**CA 99 10 03 10**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DRIVE OTHER CAR COVERAGE –
# BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: |
| --- |
| **Endorsement Effective Date:** |

### SCHEDULE

| Name Of Individual: | | | | | |
| --- | --- | --- | --- | --- | --- |
| Lisa Moore<br>John Larsen | | | | | |
| **Liability** | **Limit:** | $ 1,000,000 | **Premium:** | $ | Included |
| **Auto Medical Payments** | **Limit:** | $ $5,000 | **Premium:** | $ | Included |
| **Comprehensive** | **Deductible:** | $ 100 | **Premium:** | $ | Included |
| **Collision** | **Deductible:** | $ 500 | **Premium:** | $ | Included |
| **Uninsured Motorists** | **Limit:** | $ 1,000,000 | **Premium:** | $ | Included |
| **Underinsured Motorists** | **Limit:** | $ | **Premium:** | $ | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |



**Note** – When Uninsured Motorists Coverage is provided at limits higher than the basic limits required by a financial responsibility law, Underinsured Motorists Coverage is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

Copyright Insurance Services Office, Inc., 2009

**B. Changes In Liability Coverage**

1. Any "auto" you don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

   a. Any "auto" owned by that individual or by any member of his or her household.

   b. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos."

2. The following is added to **Who Is An Insured:**

   Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member."

**D. Changes In Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

1. Any "auto" owned by that individual or by any member of his or her household.

2. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos."

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

Copyright Insurance Services Office, Inc., 2009    CA 99 10 03 10

CA 99 44 12 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    TRUCKERS COVERAGE FORM
    BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto."

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payments to the loss payee, we will obtain his or her rights against any other party.



CA 99 44 12 93           Copyright, Insurance Services Office, Inc., 1993



G-147190-B
(Ed. 12/10)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NAMED DRIVER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Policy Number: 2099374922 | Endorsement Effective: 01/18/2013 |
|---|---|
| Named Insured: PORT OF SUBS, INC. | |

**WARNING**

**WHEN THIS ENDORSEMENT IS ATTACHED TO THE POLICY, ALL COVERAGES PROVIDED UNDER THIS POLICY WILL BE EXCLUDED WHEN A "NAMED EXCLUDED DRIVER" MAINTAINS, OPERATES OR USES ANY "AUTO."**

Schedule of Excluded Drivers

**"Named Excluded Driver(s)":**
Neil Cimino

**THIS INSURANCE DOES NOT APPLY TO ANY CLAIMS, DAMAGES, EXPENSES OR "LOSS":**

1. **ARISING OUT OF THE MAINTENANCE, OPERATION OR USE OF ANY "AUTO" BY THE "NAMED EXCLUDED DRIVER" WHETHER OR NOT SUCH MAINTENANCE, OPERATION OR USE WAS WITH THE EXPRESS OR IMPLIED PERMISSION OF ANY "INSURED" OR THE OWNER OF THE "AUTO" AND/OR,**

2. **FOR ANY NEGLIGENCE WHICH MAY BE IMPUTED TO ANY "INSURED" BY LAW ARISING OUT OF THE MAINTENANCE, OPERATION OR USE OF ANY "AUTO" BY THE "NAMED EXCLUDED DRIVER" INCLUDING, BUT NOT LIMITED TO, ANY CLAIMS AGAINST ANY "INSURED" FOR NEGLIGENT HIRING, NEGLIGENT RETENTION AND/OR NEGLIGENT ENTRUSTMENT.**

**DEFINITION:**

The following definition is added:

"Named Excluded Driver" means a person who is shown in the Schedule of this endorsement or in the Declarations as a named excluded driver.

The undersigned agrees, acknowledges and understands that the Named Driver Exclusion Endorsement shall remain in effect for the term of the policy and for each renewal, reinstatement, substitute, modified, replacement or amended policy, until discontinued by us.



Signature of Applicant / First Named Insured                    Date Signed

**CNA**

# IMPORTANT INFORMATION

## FOR OUR COMMERCIAL AUTOMOBILE POLICYHOLDERS

Dear Customer and Agent:

Due to increasing requirements imposed by states for insurance reporting or verification, CNA requires detailed information for every vehicle insured on your policy. The following information must be provided for every vehicle insured by CNA prior to the effective date of coverage. Failure to provide this information may result in fines or suspension of your vehicle registration by the state.

- Year, make and model of each vehicle

- License Plate number assigned to the vehicle

- Complete Vehicle Identification Number (VIN) - in most cases 17 digits

- Registrant name for the vehicle as shown exactly on the registration documents for the vehicle

    If Registrant is an individual provide date of birth & Drivers License Number including the state of issue.

    If Registrant is other than a person – provide tax identification or Federal Employer Identification Number (FEIN)

- Registrant Address

Please call your agent or broker with this information.



G-144291-A
(Ed. 03/03)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the COMMON POLICY CONDITIONS:

### ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person

or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.



IL 00 03 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
   TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".



"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

   Copyright, Insurance Services Office, Inc., 1997   IL 00 21 04 98

IL 01 10 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY
AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

The **CONCEALMENT, MISREPRESENTATION OR FRAUD** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss ("loss") or damage in any case of:

1. Concealment or misrepresentation of a material fact; or

2. Fraud;

committed by an insured ("insured") at any time and relating to a claim under this policy.



Copyright, ISO Properties, Inc., 2006

IL 01 15 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** All references to spouse shall include an individual who is in a domestic partnership recognized under Nevada law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

1. Individual Named Insured by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of such Named Insured's household, including a ward or foster child; or

2. Individual named in the Schedule by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or domestic partnership recognized under Nevada law, who is a resident of your household, including a ward or foster child.

IL 02 51 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEVADA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following are added to the **Cancellation** Common Policy Condition:

**7.a. Midterm Cancellation**

If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** Conviction of the insured of a crime arising out of acts increasing the hazard insured against;

**(3)** Discovery of fraud or material misrepresentation in obtaining the policy or in presenting a claim thereunder;

**(4)** Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

**(5)** A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

**(6)** A determination by the commissioner that continuation of our present volume of premiums would jeopardize our solvency or be hazardous to the interests of our policyholders, creditors or the public;

**(7)** A determination by the commissioner that the continuation of the policy would violate, or place us in violation of, any provision of the code.

**b. Anniversary Cancellation**

If this policy is written for a term longer than one year, we may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the first Named Insured at the last mailing address known to us at least 60 days before the anniversary date.

**B.** The following is added as an additional Condition and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** We need not provide this notice if:

**a.** You have accepted replacement coverage;

**b.** You have requested or agreed to nonrenewal; or

**c.** This policy is expressly designated as nonrenewable.

**C. Notices**

1.  Notice of cancellation or nonrenewal in accordance with **A.** and **B.** above, will be mailed, first class or certified, or delivered to the first Named Insured at the last mailing address known to us and will state the reason for cancellation or nonrenewal.

2.  We will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

 Copyright, ISO Properties, Inc., 2006 IL 02 51 09 07



# POLICYHOLDER NOTICE

CNA Commercial Insurance
333 S. Wabash Ave.
Chicago, Illinois 60604-4153

Regarding Your:       CNA Commercial Insurance Coverage

Dear CNA Policyholder:

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit **all** United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.







333 S Wabash
Chicago, Illinois 60604

| Policy Number | From | Policy Period | To | Coverage is Provided By | Agency |
|---|---|---|---|---|---|
| P2099374922 | 01/18/13 | 01/18/14 | | National Fire Insurance of Hartford | 080507540 |

| Named Insured And Address | Agent |
|---|---|
| PORT OF SUBS, INC.<br>5365 MAE ANNE AVE STE A29<br>RENO, NV  89523 | WELLS FARGO INSURANCE SRVCS USA, INC<br>604 W MOANA LN<br>RENO, NV 89509 |

```
        **  PAYMENT PLAN SCHEDULE  **


    THE BILLING FOR THIS POLICY WILL BE
    FORWARDED TO YOU DIRECTLY FROM CNA.


    THE PREMIUM AMOUNT FOR THIS TRANSACTION
    IS     $9,066.00 .


    THIS PREMIUM WILL BE INVOICED BY CNA ON
    A SEPARATE STATEMENT ACCORDING TO THE
    PAYMENT OPTION YOU SELECT.
```





ISSUE DATE 01/25/13



**CNA**

TEAR OUT ALONG DOTTED LINES

**CNA**

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/201 |

Vehicle Identification Number   JTEBU14R330014860
Vehicle Description   TOYOTA 4 RUNNER        Year  2003

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41370-C

**CNA**

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/201 |

Vehicle Identification Number   JTEBU14R330014860
Vehicle Description   TOYOTA 4 RUNNER        Year  2003

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41370-C



# Your Auto ID Card

20120022200937402211/02

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**



**Your Auto ID Card**

20120022200937482211183

TEAR OUT ALONG DOTTED LINES



CNA

**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford  20478

Policy Number  2099374922

Effective Date  01/18/2013
Expiration Date  01/18/2014

Year  2004

Vehicle Identification Number  1GTGG25U641135842
Vehicle Description  GMC SAVANA G2500

Insured  PORT OF SUBS, INC.
Name  5365 MAE ANNE AVE STE A29
Address  RENO, NV  89523

This card has been approved by the Nevada Commissioner of Insurance.

G-41370-C

---

CNA

**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford  20478

Policy Number  2099374922

Effective Date  01/18/2013
Expiration Date  01/18/2014

Year  2004

Vehicle Identification Number  1GTGG25U641135842
Vehicle Description  GMC SAVANA G2500

Insured  PORT OF SUBS, INC.
Name  5365 MAE ANNE AVE STE A29
Address  RENO, NV  89523

This card has been approved by the Nevada Commissioner of Insurance.

G-41370-C

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**

---

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**



## Your Auto ID Card



TEAR OUT ALONG DOTTED LINES



### NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

| | | Effective Date | 01/18/2013 | |
| | | Expiration Date | 01/18/2014 | |

Vehicle Identification Number   1GTGG29RX31101289   Year  2002
Vehicle Description   GMC SAVANA G2500

Insured    PORT OF SUBS, INC.
Name       5365 MAE ANNE AVE STE A29
Address     RENO, NV 89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41370-C

### NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

| | | Effective Date | 01/18/2013 | |
| | | Expiration Date | 01/18/2014 | |

Vehicle Identification Number   1GTGG29RX31101289   Year  2002
Vehicle Description   GMC SAVANA G2500

Insured    PORT OF SUBS, INC.
Name       5365 MAE ANNE AVE STE A29
Address     RENO, NV 89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41370-C

20120022200937482119A

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485. 185.**

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485. 185.**



## Your Auto ID Card

201200022209371@221195

TEAR OUT ALONG DOTTED LINES

**CNA**

**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, Il 60604

Company Natl Fire Ins Co of Hartford    20478

Policy Number    2099374922

| | | |
|---|---|---|
| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/2014 |

Vehicle Identification Number    1GYEK63N34R274928    Year    2004
Vehicle Description    CADILLAC ESCALADE

Insured    PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address    RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41570-C

---

**CNA**

**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, Il 60604

Company Natl Fire Ins Co of Hartford    20478

Policy Number    2099374922

| | | |
|---|---|---|
| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/2014 |

Vehicle Identification Number    1GYEK63N34R274928    Year    2004
Vehicle Description    CADILLAC ESCALADE

Insured    PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address    RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41570-C

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485. 185.**

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485. 185.**

**CNA**

TEAR OUT ALONG DOTTED LINES

**Your Auto ID Card**



2012000220063749221198



---

**CNA**

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, Il 60604

Company  Natl Fire Ins Co of Hartford  20478

Policy Number  2099374922

| | | |
|---|---|---|
| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/2014 |

Vehicle Identification Number  JTEBU5JR0B5035744

Vehicle Description  TOYOTA 4RUNNER SR    Year  2011

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41570-C

---

**CNA**

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, Il 60604

Company  Natl Fire Ins Co of Hartford  20478

Policy Number  2099374922

| | | |
|---|---|---|
| | Effective Date | 01/18/2013 |
| | Expiration Date | 01/18/2014 |

Vehicle Identification Number  JTEBU5JR0B5035744

Vehicle Description  TOYOTA 4RUNNER SR    Year  2011

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

G-41570-C

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS
SET FORTH IN NRS 485. 185.**



**CNA**

TEAR OUT ALONG DOTTED LINES

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

Effective Date   01/18/2013
Expiration Date   01/18/2014

Vehicle Identification Number   JTJBT20X580171053
Vehicle Description   LEXUS GX 470
Year   2008

Insured   PORT OF SUBS, INC.
Name   5365 MAE ANNE AVE STE A29
Address   RENO, NV 89523

**This card has been approved by the Nevada Commissioner of insurance.**

G-4157U-C



**CNA**

## NEVADA COMMERCIAL AUTOMOBILE INSURANCE
### IDENTIFICATION CARD

333 S Wabash Chicago, IL 60604

Company Natl Fire Ins Co of Hartford   20478

Policy Number   2099374922

Effective Date   01/18/2013
Expiration Date   01/18/2014

Vehicle Identification Number   JTJBT20X580171053
Vehicle Description   LEXUS GX 470
Year   2008

Insured   PORT OF SUBS, INC.
Name   5365 MAE ANNE AVE STE A29
Address   RENO, NV 89523

**This card has been approved by the Nevada Commissioner of insurance.**

G-4157U-C



# Your Auto ID Card

201200022009074921197

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485, 185.**

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485, 185.**



**Your Auto ID Card**

20120022200070221108

TEAR OUT ALONG DOTTED LINES



**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford    20478

Policy Number   2099374922

Effective Date    01/18/2013
Expiration Date   01/18/201     Year   1995

Vehicle Identification Number   4P5UE1628SL010023
            Vehicle Description   AZCA TRAILER

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

Q-41370-C



**NEVADA COMMERCIAL AUTOMOBILE INSURANCE**
**IDENTIFICATION CARD**

333 S Wabash Chicago, IL 60604

Company  Natl Fire Ins Co of Hartford    20478

Policy Number   2099374922

Effective Date    01/18/2013
Expiration Date   01/18/201     Year   1995

Vehicle Identification Number   4P5UE1628SL010023
            Vehicle Description   AZCA TRAILER

Insured   PORT OF SUBS, INC.
Name      5365 MAE ANNE AVE STE A29
Address   RENO, NV  89523

**This card has been approved by the Nevada Commissioner of Insurance.**

Q-41370-C

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485.185.**

**THIS CARD MUST BE CARRIED IN THE INSURED MOTOR VEHICLE FOR PRODUCTION UPON DEMAND**

To report a claim you may call:

CNA Commercial Liability Claims Dept.
(877) CNA-ASAP (877-262-2727)

Or

www.CNA.com

**COVERAGE MEETS THE REQUIREMENTS SET FORTH IN NRS 485.185.**



**END OF COPY**

# EXHIBIT 2

# EXHIBIT 2

1  CODE: $1425
   CURTIS B. COULTER, ESQ.
2  NEVADA BAR #3034
   LAW OFFICES OF CURTIS B. COULTER, P.C.
3  403 HILL STREET
   RENO, NEVADA 89501
4  P: 775.324.3380
   F: 775.324.3381
5

6  *Attorney For Plaintiffs*

7

8         IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

9                     IN AND FOR THE COUNTY OF WASHOE

10 LAURA OGALDEZ, individually and as       Case No.: CV14 01778
   Special Administratrix of the Estate of
11 FERMIN OGALDEZ,                            Dept. No.: 10
   ROBERT OGALDEZ, and
12 DANIEL OGALDEZ,

13                   Plaintiffs,

14 v.

15 PORT OF SUBS, INC.,
   RICHARD EUGENE WILLIAMS, individually
16 and as Manager of the GRAND SIERRA RESORT
   location of PORT OF SUBS, INC.,
17 and DOES 1-10, inclusive,

18                   Defendants.

19 _____/

20                        **COMPLAINT**

21

22        Plaintiffs Laura Ogaldez, individually and as Special Administratrix of the Estate

23 of Fermin Ogaldez, Robert Ogaldez and Daniel Ogaldez by and through their attorney,

24 Curtis B. Coulter, Esq. with the Law Offices of Curtis B. Coulter, Esq., P.C., hereby

25 complain and allege against Defendants as follows:

26

27                            -1-

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

FILED
2014 AUG 15 PM 5: 03
JOEY ORDUNA HASTINGS
CLERK OF THE COURT
BY_____ M. Torres
DEPUTY

## FIRST CLAIM FOR RELIEF

### (Negligence)

1.     Plaintiffs at all times mentioned herein, are and have been residents of the County of Washoe, State of Nevada.

2.     Laura Ogaldez is the wife of Fermin Ogaldez and natural mother of Robert and Daniel Ogaldez.

3.     Laura Ogaldez was appointed as Special Administratrix of the Estate of Fermin Ogaldez on August 14, 2014, by Order of the Second Judicial District Court, Case No.: PR14-00418, Dept. No.: PR.

4.     Upon information and belief, Plaintiffs allege that Defendant, Port of Subs, Inc., ("POS") is a business with its principal place of business in Washoe County, State of Nevada.

5.     Upon information and belief, Plaintiffs allege that Defendant, Richard E. Williams ("Williams"), is and at all relevant times has been a resident of Washoe County, State of NEVADA.

6.     The true names and capacities of Defendants named herein as DOES 1 through 10, inclusive, are unknown to Plaintiffs who therefore sue these Defendants, and each of them, by such fictitious names.  Said DOE Defendants may be individuals, partners, joint venturers, corporations or other entities, including the registered owner of Williams' vehicle, which was driven by Williams at the time of the collision mentioned herein.  Plaintiffs will amend their Complaint to include the true names and capacities of such Defendants when the same has been ascertained.  Plaintiffs further allege that DOE Defendants may have owned, operated, or had the right to control the subject vehicle driven by Williams, and/or were responsible for the safety training of Williams.

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-2-

7.      Defendant Williams, at all relevant times, was an agent of Defendant, POS, for the acts described herein.

8.      On August 3, 2013, Williams was an employee of POS.

9.      Defendants are responsible for the injuries of Fermin Ogaldez, who was fatally injured on August 3, 2013, and for the damages alleged by the Plaintiffs herein.

10.      Plaintiffs are informed and believe and thereon allege that Defendant, Williams, at the time of Fermin Ogaldez' death, was the Manager of POS' restaurant in the Grand Sierra Resort in Reno, Nevada.

11.      Plaintiffs are informed and believe and thereon allege that Defendant, Williams was at the time of the collision between the Williams' vehicle and the vehicle driven by Fermin Ogaldez, scheduled to be working for POS at the Grand Sierra Resort.

12.      During the course and scope of his employment, Williams used his personal vehicle to perform acts, duties or tasks beyond the POS premises at Grand Sierra Resort.

13.      Williams' use of his personal vehicle to perform acts, duties or tasks for POS was beneficial to POS.  Such acts occurred on and before August 3, 2013, while Williams was employed by POS.

14.      Williams' use of his personal vehicle to perform acts, duties or tasks for the benefit of POS occurred on occasions previous to August 3, 2013.

15.      Williams was required, implicitly or expressly, to use his personal vehicle for the benefit of POS while employed as a Manager at the POS restaurant located at Grand Sierra Resort on and before August 3, 2013.

16.      At times, when Williams used his personal vehicle for the benefit of POS, Williams' used his vehicle within the time he was scheduled to be working for POS.

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-3-

17.     At times, when Williams used his personal vehicle for the benefit of POS, Williams' used his vehicle at a time he was not scheduled to be working for POS.

18.     On August 3, 2013, Williams was the Manager for the POS restaurant located in the Grand Sierra Resort, located in Reno, Nevada.

19.     On August 3, 2013, Williams departed POS' restaurant in the Grand Sierra Resort in his personal vehicle and proceeded in a southbound direction to the intersection of Mill Street.

20.     On August 3, 2013, when Williams, while driving his vehicle, reached Mill Street he steered his vehicle to the right (west).

21.     At the time Williams was at the above mentioned intersection, Williams intended to proceed west on Mill Street to a bank with the intent of making a bank deposit for the benefit of POS.

22.     On August 3, 2013, shortly after turning west on Mill Street, Williams redirected his vehicle in a southbound direction.

23.     On August 3, 2013, when Williams redirected his vehicle southbound to cross Mill Street, the traffic control light was "red" for traffic southbound crossing Mill Street.

24.     As Williams traveled southbound on August 3, 2013, crossing Mill Street, the vehicle he was driving was impacted by the motorcycle ridden by Fermin Ogaldez.

25.     Williams should not have driven his vehicle south across Mill Street, against the traffic control signal, as he did on August 3, 2013.

26.     Williams was negligent when he drove his vehicle south across Mill Street on August 3, 2013, in the moments before and at the moment of impact with the motorcycle ridden by Fermin Ogaldez.

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-4-

27.     Williams' act of driving his vehicle south across Mill Street on August 3, 2013, in the moments before and at the time of the impact between the motorcycle ridden by Fermin Ogaldez, violated Fermin Ogaldez' "right of way." NRS 484B.250.

28.     At the time of the collision on August 3, 2013, Fermin Ogaldez had the right of way and the right to proceed through the intersection eastbound without interference from Williams. NRS 484B.250.

29.     When Williams proceeded south across Mill Street on August 3, 2013, he disobeyed the traffic control device; he ran the red light.

30.     Williams violated one or more of the provisions of NRS 484B.300.

31.     Williams violated NRS 484B.307, when he proceeded south across Mill Street on August 3, 2013.

32.     At the time of the collision between the vehicle driven by Williams and the motorcycle ridden by Fermin Ogaldez, Williams was the driver of a motor vehicle and was in actual physical control of the motor vehicle.

33.     Defendant Williams, while driving the motor vehicle and in actual physical control of his motor vehicle, proximately caused the death of Fermin Ogaldez through an act or omission.

34.     At the time of the collision on August 3, 2013, between Williams and Fermin Ogaldez the vehicle driven by Williams was not currently registered with the Nevada Department of Motor Vehicles so that it could be lawfully operated on Nevada roadways.

35.     At the time of the collision between the Williams' vehicle and Fermin Ogaldez' motorcycle, Williams was wearing his POS uniform.

36.     Fermin Ogaldez had a conscious perception that the impact with Williams'

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-5-

1    vehicle was imminent on August 3, 2013, as described herein.

2          37.    Fermin Ogaldez attempted to avoid the collision with Williams by turning

3    his motorcycle to the left (north) before the vehicles impacted on August 3, 2013.

4          38.    As a result of the impact between the Williams' vehicle and Fermin

5    Ogaldez' motorcycle on August 3, 2013, Fermin Ogaldez was projected into the air in a

6    north westerly direction.

7          39.    As a result of the collision on August 3, 2013, Fermin Ogaldez suffered

8    pain, disfigurement and death.

9

10         40.    Plaintiffs have sustained special and general damages in amount in

11   excess of $10,000.

12         41.    The Estate of Fermin Ogaldez has lost income as a direct and proximate

13   result of the Defendants' conduct.

14         42.    Williams was criminally charged with vehicular manslaughter as a result of

15   causing the death of Fermin Ogaldez.

16         43.    Williams violated NRS 484B.657 (vehicular manslaughter) in causing the

17   death of Fermin Ogaldez.

18         44.    The motorcycle ridden by Fermin Ogaldez was damaged in the August 3,

19   2013, collision.

20         45.    Williams violated NRS 484B.260 in failing to yield the right of way to

21   Fermin Ogaldez.

22         46.    After impact, on August 3, 2013, between the Williams' vehicle and Fermin

23   Ogaldez' motorcycle, and while at the scene of the collision, Williams called a

24   management representative of POS to disclose that he had been involved in a collision.

25         47.    After the collision on August 3, 2013, Williams exited his vehicle to check

26

27                                             -6-

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

1  on Fermin Ogaldez.

2      48.    On August 3, 2013, when Williams was involved in the above described

3  collision, Williams was wearing his POS uniform.

4      49.    After the collision on August 3, 2013, Williams exited his vehicle and

5  approached Fermin Ogaldez at that time, Williams was wearing his POS uniform.

6      50.    The vehicle driven by Williams was last registered before the August 3,

7  2013, collision, to Marc Thomas Williams and Richard Eugene Williams.

8

9      51.    The Plaintiffs are heirs of the Estate of Fermin Ogaldez as the term "heirs"

10 is used in NRS 41.085.

11     52.    As the direct and proximate result of Defendants' conduct, the Plaintiffs

12 have suffered grief, sorrow, and loss of support, loss of companionship, loss of society,

13 loss of comfort and loss of consortium.

14     53.    As a direct and proximate result of Defendants' negligent acts, Plaintiffs

15 suffered damages in an amount in excess of $10,000.  Said damages include past and

16 future damages, as well as property damage.

17     54.    As a further direct and proximate result of the recklessness, carelessness

18 and negligence of Defendants, Plaintiffs have been forced to retain the services of an

19 attorney and have incurred attorney's fees and costs associated therewith.

20                    SECOND CLAIM FOR RELIEF

21                       (Negligence per se)

22     55.    Plaintiffs reallege the paragraphs contained in their previous and following

23 claims for relief as if said paragraphs were set forth in full herein.

24     56.    Defendants violated certain provisions of Nevada Law as set forth herein.

25     57.    Said laws were enacted to protect members of the public such as the

26

27                            -7-

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

1    Plaintiff, Fermin Ogaldez.

2         58.    As a direct and proximate result of the Defendants' violation of said

3    laws, Fermin Ogaldez was fatally injured.

4         59.    Defendants, and each of them, are liable for damages as alleged

5    herein.

6                          THIRD CLAIM FOR RELIEF

7                    (Negligent Infliction of Emotional Distress)

8
9         60.    Plaintiffs reallege the paragraphs contained in their previous and following

10   claims for relief as if said paragraphs were set forth in full herein.

11        61.    Defendants negligently inflicted emotional distress upon Fermin Ogaldez.

12        62.    As a direct and proximate result of Defendants' conduct, the Plaintiffs have

13   suffered emotional distress, pain and suffering.  The amount shall be proved at trial.

14        63.    As a direct and proximate result of Defendants' conduct, Fermin Ogaldez

15   suffered emotional distress inducing pre-impact terror.

16        64.    The Defendants, and each of them, are liable for the Plaintiffs' damages

17   as alleged herein.

18                         FOURTH CLAIM FOR RELIEF

19                   (Intentional Infliction of Emotional Distress)

20        65.    Plaintiffs reallege the paragraphs contained in their previous and following

21   claims for relief as if said paragraphs were set forth in full herein.

22        66.    Defendant, Williams intentionally and volitionally ran the red traffic control

23   light at Mill Street as set forth herein, in violation of applicable law with a wanton and

24   willful disregard of the rights and safety of others, including the Plaintiffs as alleged

25   herein.

26

27

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-8-

67. Defendants' conduct constitutes fraud, malice or oppression under Nevada Law.

68. Williams' conduct alleged herein, which occurred on August 3, 2013, occurred in the course and scope of Williams' employment with POS.

69. POS is vicariously liable for the actions of Williams which occurred on August 3, 2013 and which caused the death of Fermin Ogaldez.

70. Imposition of punitive damages against the Defendants is just and proper, said damages shall be determined by the trier of fact.

71. The Defendants, and each of them, are jointly and severally liable for Plaintiffs' damages, described herein.

72. Defendant's conduct described herein was done with a conscious disregard of the rights and safety of the public, including the Plaintiffs', and with the intent to vex, injure and annoy the Plaintiffs, such as to constitute oppression, malice or fraud and/or wanton and/or willful disregard of Plaintiffs' rights as set forth and defined under the laws of the State of Nevada, entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of the Defendants.

73. Before the impact between Williams' vehicle and Fermin Ogaldez' motorcycle, Williams realized he was crossing Mill Street illegally on August 3, 013

74. Although knowing he was crossing Mill Street on August 3, 2013 illegally, Williams did not bring his vehicle to a stop.

75. Although Williams realized he was crossing Mill Street illegally on August 3, 2013, he proceeded to operate his motor vehicle in a southerly direction.

76. As a direct and proximate result of the Defendants' conduct, Fermin Ogaldez suffered fatal injuries leaving his surviving family members to suffer and to

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-9-

1   experience pain, emotional distress, loss of enjoyment of life, loss of income, medical

2   expenses, property damage, loss of use, towing and storage expenses and other

3   damages all to their special and general damage of his estate in an amount in excess of

4   $10,000.00.

5       77.     As a further direct and proximate result of the recklessness, carelessness,

6   negligence and wanton and wilful conduct of the Defendants, Plaintiffs have been forced

7   to retain the services of an attorney and have incurred costs and attorney fees.

8

9                              FIFTH CLAIM FOR RELIEF

10                                   (Assault)

11      78.     Plaintiffs reallege the paragraphs contained in their previous and following

12  claims for relief as if said paragraphs were set forth in full herein.

13      79.     Immediately prior to the collision described herein, on August 3, 2013,

14  Fermin Ogaldez had apprehension of immediate physical contact with the vehicle driven

15  by and in control of Williams.

16      80.     Fermin Ogaldez did not consent to the actions of Williams occurring on

17  August 3, 2013, described herein.

18      81.     Williams had no privilege or legal justification allowing him to run the red

19  light on August 3, 2013, which resulted in the collision between the Williams' vehicle and

20  the motorcycle ridden by Fermin Ogaldez.

21      82.     When Williams crossed the intersection at Mill Street, as described herein,

22  on August 3, 2013, his conduct constituted circumstances showing a reckless disregard

23  of the rights and safety of others including the right and safety of Fermin Ogaldez.

24      83.     The assault suffered by Fermin Ogaldez resulted from Williams' intentional

25  disregard of the traffic control device.

26

27

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-10-

84.   Williams was in exclusive control of his motor vehicle when he disregarded the traffic control device, as described herein, on August 3, 2013.

85.   It was foreseeable when Williams ran a red light on August 3, 2013, as described herein, that a collision with a vehicle that had the right to proceed eastbound through the intersection would occur.

86.   As a direct and proximate result of the conduct of Williams, as described herein, Fermin Ogaldez had apprehension of immediate physical contact with the Williams' vehicle.

87.   The conduct of Williams, as described herein, justifies the imposition of punitive damages as allowed by law and as determine by the trier of fact.  Punitive damages are appropriate to punish Williams and/or to deter others from engaging in the same or similar conduct as that engaged in by Williams on August 3, 2013.

<u>SIXTH CLAIM FOR RELIEF</u>

**(Battery)**

88.   Plaintiffs reallege the paragraphs contained in their previous and following claims for relief as if said paragraphs were set forth in full herein.

89.   The conduct engaged in by Williams, as described herein, on August 3, 2013, resulted in an offensive contact between Williams and Fermin Ogaldez.

90.   The conduct of Williams as described herein which occurred on August 3, 2013, constitutes battery.

91.   As a direct and proximate result of the battery caused by Williams, Fermin Ogaldez and the Plaintiffs have been damaged in an amount to be proved at trial.

92.   The conduct of Williams, as described herein, occurred with a wanton and willful disregard for the rights and safety of others including the rights and safety of

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

-11-

1  Fermin Ogaldez.

2      93.    The conduct of Williams, as described herein, constitutes a harmful and

3  offensive contact with Fermin Ogaldez.

4      94.    One or more of the Plaintiffs are entitled to recover punitive damages as

5  allowed pursuant to Nevada law.

6      WHEREFORE, Plaintiffs pray for judgment on their Complaint as follows:

7      1.    For past and future special damages for Laura Ogaldez, the Estate of

8  Fermin Ogaldez, Robert Ogaldez, and Daniel Ogaldez, in an amount to be proven at

9  trial, but in excess of $10,000.00, each;

10

11     2.    For past and future general damages, for Laura Ogaldez, the Estate of

12  Fermin Ogaldez, Robert Ogaldez, and Daniel Ogaldez, in an amount in excess of

13  $10,000.00, each;

14     3.    For a finding that POS is vicariously liable for the action of Williams;

15     4.    For pre-judgment interest;

16     5.    For punitive damages as allowed by Nevada Law;

17     6.    For reasonable costs and attorney's fees; and

18     7.    For such other and further relief as the Court may deem proper.

19  DATED: _9- 1 5- 1 4_____

20  The undersigned does hereby affirm that, pursuant to NRS 239B.030, the above document does not contain
    the Social Security Number of any person.

21

22

23  Curtis B. Coulter, Esq.
    Law Offices of Curtis B. Coulter, P.C.

24  403 Hill Street
    Reno, Nevada 89501

25  *Attorneys for Plaintiffs*

26

27                              -12-

28

Law Offices of
Curtis B. Coulter
403 Hill Street
Reno, Nevada 89501
(702) 324-3380
FAX (702) 324-3381

# EXHIBIT 3

# EXHIBIT 3



333 S. Wabash Ave. Chicago IL 60604

**Mitch Roberts**
*Claim Consultant*
Telephone   303-858-4124
            800-262-5303 x4124
Facsimile   312-260-6549

August 26, 2014

Mike Powell, John Larsen and Lisa Moore
Port of Subs, Inc.
5365 Mae Anne Avenue, Suite A29
Reno, Nevada  89523

SENT CERTIFIED MAIL, RETURN RECEIPT REQUESTED
ALSO BY E-MAIL: mpowell@portofsubs.com; jlarsen@portofsubs.com;
                lmoore@portofsubs.com

| Re: | Claim No.: | E2B10757 |
|---|---|---|
| | Insured: | Port of Subs, Inc. |
| | Plaintiff: | Estate of Fermine Olgaldez |
| | Date of Loss: | 8-3-2013 |
| | Date of Notice: | 12-19-2013 |
| | Policy No.: | 2099374922 |
| | Policy Dates: | 1-18-2013 / 1-18-2014 |
| | Issuing Company: | National Fire Insurance Company of Hartford (NFIC) |

Dear Mr. Powell, Mr. Larsen and Ms. Moore:

We understand you are being sued by Laura Ogladez, individually and as Special Administratrix of the Estate of Fermin Ogaldez, Robert Ogaldez and Daniel Ogaldez.  We will defend you, but want you to be aware that certain elements of the lawsuit may not be covered.

Based on the information we have, we understand that this matter involves an automobile accident involving Richard Williams, an off duty Port of Subs manager involved in a vehicle/motorcycle accident while returning home after completion of his work day.

Complaint Causes of Action are:

I. Negligence - alleges Williams was an employee of Port of Subs and in the course and scope of his employment. Was involved in a fatal auto/motorcycle accident.
II. Negligence Per Se.
III. Negligent Infliction of Emotional Distress
IV. Intentional Infliction of Emotional Distress (intentionally ran the red light).
V. Assault
VI. Battery

Tyler Crawford and John Bemis of the law firm of Hall, Prangle & Schoonveld; 1160 N. Town

Center dr., Suite 200; Las Vegas, NV 89144; 702-889-6400 have been retained to represent you as defense counsel. Attorney Tyler Crawford and John Bemis's contact information is listed above.

Form CA0001 03/2010 is the business automobile policy. Some of the policy terms are:

Subject to all of its terms, conditions and limitations, the policy provides that we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

All words in quotations are defined in your policy and we refer you to your policy for those definitions.

Coverage under your policy covers you for damages arising out of judgments, awards or settlements for the vicarious covered claims attributable to Mr. Williams, if he is found in the course and scope of employment for Port of Subs. If a court finds, Mr. Williams was not in the course and scope and/or performing a special errand for Port of Subs, then Port of Subs would have no liability for the accident.

Areas where indemnification may be provided (if Williams is found to be in the course and scope of his employment) include claims for Negligence and Negligence Per Se. If the accident was intentionally caused, the exclusion for expected and intended injury would apply to bar recovery under an insurance policy. The claims of assault and battery are intentional and would not be indemnified under this policy.

The Ogaldez complaint also seeks to recover Punitive or Exemplary Damages, which are damages awarded to punish an offender. These damages are generally not covered by insurance policies; it is against public policy for an insurance company to indemnify against them.

Continental Casualty Company (CCC) also issued Commercial Umbrella Policy No 2099374872 to Port of Subs, Inc. We incorporate the terms, provisions and endorsements of the Umbrella Policy into this letter. The grounds set forth in our Coverage Position also apply to said Commercial Umbrella Policy and CCC adopts and joins in the Coverage Position as stated.

Coverage under the NFIC policy is subject to the policy limits of $1,000,000 and $10,000,000 on the umbrella policy. We will not be responsible for that portion of any award or settlement which is in excess of the applicable policy limits.

We invite your attention to this so you can consider whether you wish to retain an attorney at your expense to join in representing you. If so, we would be glad to work with your attorney involved in the preparation and defense of this lawsuit. Your representation by CNA appointed counsel is limited to preparation for and defense of this case at trial. The matter of settlement remains within

2

the discretion of CNA pursuant to the policy provisions.  It is possible you may disagree with the approach taken by CNA. If so, you or your personal attorney should communicate directly with me.

In connection with our determination that the policy may not provide coverage for some or all elements of this claim, we have quoted and/or paraphrased the policy language. However, we reserve our right to rely upon all of the policy's provisions, whether or not specifically quoted and/or paraphrased in this letter.

As stated above, we are currently accepting your request for a defense under a reservation of rights. However, at this early stage of the litigation certain factual information may not yet be determined which could potentially affect the coverage available.  We therefore reserve our right to modify our position.  We reserve the right to seek reimbursement for any and all sums paid for indemnity or defense costs to the extent it is determined that we had no obligation to provide coverage for this claim.

If at any time you have any questions regarding our position, please do not hesitate to contact me or your agent/broker.

Sincerely,

Mitch Roberts
Claims Consultant
National Fire Insurance Company of Hartford
Continental Casualty Company


Cc: Wells Fargo Insurance Services USA, Inc.
       604 W. Moana Lane
       Reno, NV  89509-4903

# EXHIBIT 4

# EXHIBIT 4

# WALSH, BAKER,
# ROSEVEAR & LOOMIS

JAMES M. WALSH *
WILLIAM A. BAKER
ANN SETTY-ROSEVEAR**
KEITH L. LOOMIS

PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
9468 DOUBLE R BOULEVARD, SUITE A
RENO, NEVADA 89521

TELEPHONE (775) 853-0883
FACSIMILE (775) 853-0860
jmwalsh@wbrl.net

* Admitted in Nevada and California
**Admitted in Nevada, Washington and Oregon

September 8, 2014

***Via US Mail, Email and Fascimile***
Mitch Roberts, Claims Consultant
CNA
333 S. Wabash Ave.
Chicago, IL 60604
Mitchell.Roberts@cna.com

|   |   |   |
|---|---|---|
| RE: | CLAIM NO.: | E2B10757 |
|   | INSURED: | PORT OF SUBS, INC. |
|   | PLAINTIFF: | ESTATE OF FERMINE OGALDEZ |
|   | DATE OF LOSS: | 8-3-2013 |
|   | DATE OF NOTICE: | 12-19-2013 |
|   | POLICY NO.: | 2099374922 |
|   | POLICY DATES: | 1-18-2013 / 1-18-2014 |
|   | ISSUING COMPANY: | NATIONAL FIRE INSURANCE COMPANY OF HARTFORD |

Dear Mr. Roberts:

This office represents Port of Subs, Inc. (hereinafter referred to as "POS") with regard to the above-referenced claim. I have been forwarded your letter of August 26, 2014 for review and reply. There are several issues raised in that letter that require clarification and comment.

You indicate that POS will be defended. You then set forth the six causes of action alleged in the Complaint and note that if the accident was intentionally caused the exclusions for expected or intended injury would apply to bar coverage. The claims for assault and battery are intentional and would not be indemnified under the policy.

Under the intentional act exclusion, I would assume you are also including, although not stated, the fourth cause of action -- Intentional Infliction of Emotional Distress. Can you please confirm that, although you contend these three claims for relief and the related claims for punitive damages would not be covered, is CNA/NFIC providing a defense to Port of Subs as to those claims?

You also note that coverage under the NFIC policy is subject to policy limits of $1,000,000 and $10,000,000 under the umbrella policy. I believe this may be incorrect. The policy you referred to is Policy No. 2099374922 with policy dates of 1-18-2013 through 1-18-2014. This was the Port

*September 8, 2014*
*Page 2*

of Subs automobile policy in effect during the applicable period of time. As this accident involved the non-owned personal vehicle of Mr. Williams, it is possible the correct coverage may fall under the Master of Liability Policy No. 2099375018 with applicable limits of $2,000,000 per occurrence. Please verify.

You also indicated that since a number of the claims and damages sought are contended to be uncovered by the policy, Port of Subs may wish to retain an attorney at its expense to join in the representation. Your reservation of rights creates a conflict of interest; therefore, Port of Subs should be entitled to the appointment of this office as *Cumis* counsel at the expense of the insurer. Please consider this letter a demand for the payment of Port of Subs, Inc.'s attorney's fees and costs in defense of the non-covered matters at the expense of your company.

While we realize that the state of Nevada has not either adopted or rejected the requirement imposed by the *Cumis* decision[1], the indication by Nevada courts is that in this situation, the requirement of the retention of independent counsel at the insurer's expense will be imposed by the Nevada Supreme Court. I would direct your attention to the most recent statement on this issue, a decision entered by Judge Miranda M. Du of the United States District Court, District of Nevada in Hansen v. State Farm Mutual Automobile Insurance Company, Case No. 2:10-cv-01434-MMD-RJJ, filed December 12, 2012. A copy is enclosed for your reference.

In that Order, Judge Du specifically found that the *Cumis* requirements are in accord with Nevada law. This being the Nevada Supreme Court's holdings in *Nevada Yellow Cab Corp. vs. Eight Judicial Dist. Court ex. rel.*, 152 P.3d 737, 742-43 (Nev. 2007). This is consistent with the majority of the courts in the country that have addressed the *Cumis* conflict issue. These courts have held that the insurer is required to retain counsel to represent the insured in a conflict situation caused by the reservation of rights.

Judge Du indicated that the Nevada Supreme Court would most likely adopt the view that the severity of the reservation of rights conflict requiring *Cumis* counsel would be examined on a case by case basis in Nevada. She then found that in that case, as in the instant case, a reservation of right asserted as to covered and non-covered intentional act causes of action created a per se conflict of interest requiring the appointment of insurer compensated independent counsel on behalf of the insured. As is probably the case in this action, in the Hansen case, the insured admitted to negligent acts but denied intentional conduct. State Farm incorrectly asserted that any conflict of interest was merely hypothetical. Despite the insured's denial of intentional conduct the Plaintiffs continued to pursue claims of negligent and intentional conduct against the insured. As such, the conflict of interest between the insured and the insurer was more than hypothetical conflict that arises in any reservation of rights situation. It was a legal conflict because the Plaintiffs asserted the insurers were liable for intentional conduct and sought punitive damages. As here, the insurer reserved the right to deny coverage for those claims and damages. Therefore, the dangers of dual representation as

---

[1] *San Diego Navy Federal Credit Union vs. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d. 358, 364 (1984).

*September 8, 2014*
*Page 3*

articulated in the *Twin City*[2] case existed.  The possibilities that the insurer's appointed counsel would make only nominal efforts to defends against the intentional tort claims and punitive damages existed, and the concern that the appointed counsel would gain access to confidential information which could be later used against the insured if State Farm contested coverage existed.  Judge Du concluded that due to the foregoing reasons, there was a conflict of interest between the Aguilars and State Farm Insurance in the underlying action.  The insurer's duty to defend the insured encompassed its obligation to provide them with independent counsel.  The judge noted that the *Cumis* doctrine requires the <u>insurer</u>, not the insured to compensate the insured's independent attorney.  State Farm did not provide the Aguilars with independent counsel in violation of the *Cumis* requirements and what she believed would be found to be Nevada state law.  This analysis is applicable to this claim and we believe Port of Subs, Inc. is entitled to *Cumis* counsel to be paid for by CNA.

While we believe the claims of intentional conduct lack merit in this case, they clearly create significant exposure to Port of Subs.  CNA's reservation of rights creates a conflict as to the conduct of the defense of this matter and pressure that it be resolved early and in the best interest of Port of Subs.  Your prompt response is necessary so that in the event you deny the Cumis request, Port of Subs can timely take necessary steps to protect itself and seek a judicial declaration of its rights under the policies.

Port of Subs would request your response to these issues as quickly as possible so it may know how to proceed.

Sincerely,

JAMES M. WALSH, ESQ.

JMW/dv
Enclosure
cc:  John Larsen
     Mike Powell
     Lisa Moore

---

[2] *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365 (4th Cir. 2005).

1
2
3
4
5
6                    UNITED STATES DISTRICT COURT

7                         DISTRICT OF NEVADA

8                                * * *

9   STEPHEN TANNER HANSEN, et al.,    |  Case No. 2:10-cv-01434-MMD-RJJ

10                   Plaintiffs,

11         v.                                      ORDER

12  STATE FARM MUTUAL AUTOMOBILE       (State Farm Auto's Motion for Summary
    INSURANCE COMPANY, et al.,             Judgment – dkt. no. 40)
13
                    Defendants.
14

15

16         Before the Court is Defendant State Farm Auto's ("SFA") Motion for Summary

17  Judgment.  (Dkt. no. 40.)  For the reasons stated below, the Motion is denied.

18  **I.     BACKGROUND**

19         This case concerns an assignment of rights belonging to an insured against an

20  insurance company.  The original lawsuit involving the parties to this case was filed in

21  state court in late 2004.  Below is a summary of the facts pertinent to this Motion.

22         **A.     The Incident Giving Rise to the Original Lawsuit**

23         On July 18, 2003, Plaintiff Stephen Hansen and two friends, Craig LeFevre and

24  Joe Grill, attended a party in the suburbs of Las Vegas, Nevada.  Members of a local

25  gang called the "311 Boyz," including assignor Brad Aguilar, were at the party.  Hansen,

26  LeFevre, and Grill felt uncomfortable and decided to leave the party, but were prevented

27  from doing so because several individuals were sitting on or standing behind Craig's

28  vehicle.  At this point, a partygoer named Matt Costello hit Craig several times.  The

1    teens eventually drove away from the party towards the gated portion of the subdivision.

2    Brad Aguilar followed Craig's car in Brad's jeep. While stopped at the gate, Craig's

3    vehicle was hit from behind by Brad, who was in the insured vehicle.

4         After Craig, Grill, and Hansen exited the security gate and as Craig was

5    attempting to drive away, his vehicle was showered with rocks, bottles, and cans,

6    allegedly hurled by individuals from the party. Craig and Grill suffered minor injuries.

7    Hansen suffered severe and permanent injuries when he was struck by a large rock that

8    crashed through the windshield of Craig's car during the incident. Hansen has

9    undergone multiple surgeries and remains in need of future medical treatment.

10        **B.    The State Court Action and State Farm Auto's Defense**[1]

11        The "311 Boyz" incident formed the basis of a state court action filed by Hansen,

12   Craig, Grill, and their respective parents on December 30, 2004. Defendants included

13   twelve alleged members of the 311 Boyz, one of which was Brad Aguilar. The complaint

14   alleged liability under a theory of negligence as well as intentional behavior, including

15   assault, battery, false imprisonment, conspiracy, and RICO. (*See* dkt. no. 43, ex. 2.) The

16   plaintiffs sought several forms of relief, including punitive damages. (*Id.*)

17        On or about September 23, 2005, SFA received a demand to defend or indemnify

18   Brad Aguilar. The demand was sent by attorney Dennis Prince, counsel for Brad's

19   mother, who was insured under an Allstate homeowner's insurance policy. On

20   November 9, 2005, SFA agreed to defend Brad under a reservation of rights. Attorney

21   Riley Clayton from Hall, Jaffe, and Clayton ("HJC") was retained as counsel for Brad.

22   The reservation of rights letter specifically reserved the right to deny coverage for liability

23   falling outside the Aguilars' insurance policy, including "occurrence" and "intentional acts"

24

25

26        [1]The Court omits certain facts regarding the Aguilars' and Plaintiffs' attempts to
     recover from State Farm Fire ("SFF"). At several points during the state court litigation
27   the Aguilars and/or Plaintiffs requested that SFF defend the action. On each occasion
     SFF denied Brad coverage, although it provided Ernest coverage under a reservation of
28   rights in 2007.

                                          2

1  exclusions.[2] (Dkt. no. 41 at 28-30.) In the letter, SFA also denied coverage for punitive
2  damages.[3] (Id.)

3      Brad also requested defense and indemnification from his parents' homeowner
4  insurer, State Farm Fire ("SFF"), but SFF informed Brad that the homeowner's policy did
5  not require it to defend or indemnify him.

6      On December 15, 2005, the parties participated in mediation. SFA proffered a
7  settlement offer of $7,500. The plaintiffs did not accept the offer.

8      In March 2006, Ernest Aguilar, Brad's father, was added to the lawsuit in the
9  second amended complaint. SFA accepted Ernest's defense under a reservation of
10 rights and provided him with counsel from HJC. Ernest also tendered a request to
11 defend or indemnify to SFF. SFF initially declined to defend or indemnify Ernest, but on
12 February 5, 2007, SFF agreed to defend Ernest subject to a reservation of rights.

13     During discovery, Brad admitted that he struck LeFevre's vehicle, but claimed that
14 it was accidental. He denied intentional wrongdoing. Because Brad admitted striking
15 LeFevre's vehicle, plaintiffs moved for summary judgment on the negligence claim. On
16 May 12, 2006, the state court entered summary judgment in favor of Hansen against
17 Brad on the negligence claim, holding that Brad breached a duty of care owed to
18 plaintiffs with respect to the incident at the gate.

19
20

21     [2]The letter reads, in relevant part: "We wish to call your attention to the fact that
22 we specifically reserve our right to deny you and anyone claiming coverage under the
   policy, for the following reason(s): . . . It is questionable whether the bodily injury or
   property damage was caused by an intentional act." (Dkt. no. 41 at 28.)
23
       [3] The reservation of rights letter also included the following language:
24
       Because of [the reservation of rights and the] fact that the amount claimed against
25     you for general damages in this suit is not specified, any judgment against you
       could be in excess of the protection afforded by this policy and there may be a
26     personal liability for damages on your part. In view of your possible personal
       liability, it will be agreeable with the Company for you, if you elect, to employ
27     attorneys of your own choosing, at your own expense, to represent you personally
       and to appear in this matter, in addition to the law firm we have selected and will
28     compensate.

3

On May 30, 2006, the plaintiffs sent a demand letter to the Aguilar's attorneys for $125,000. This represented Brad and Ernest's total State Farm policy limits – $100,000 in homeowner's insurance and $25,000 in automobile insurance. On July 10, 2006, SFA offered $25,000 to Hansen and $25,000 to plaintiffs Grill and Lefevre, to be apportioned equally between them.[4] Grill and Lefevre accepted the offer but Hansen rejected it.

On August 9, 2006, Hansen served an Offer of Judgment on Ernest for $49,000 and an Offer of Judgment on Brad for $124,000. Because the two offers created a conflict of interest between Brad and Ernest with respect to settlement, SFA retained Gina Winsepar to assist Brad in discussing the offers and Susan Sherrod to assist Ernest. On Sherrod's recommendation, Ernest retained attorney David Sampson as personal counsel for himself and his son.

On August 26, 2008, Brad and Ernest signed two separate settlement agreements to the following effect:

- Brad assigned his rights against SFA in favor of Hansen and LeFevre
- Brad's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Brad assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre
- Ernest assigned his rights against SFA in favor of Hansen and LeFevre
- Ernest's assignment acknowledged that a judgment of $176,000 had been entered against him in favor of Hansen and LeFevre on the claims of "negligence" and "negligence per se."
- Ernest assigned all breach of contract and bad faith claims which he held to Hansen and Lefevre

On October 16, 2008, two Stipulations for Entry of Judgment were filed in state court in the sum of $176,000 on plaintiffs' negligence and negligence per se claims, one for their claims against Brad and one for their claims against Ernest.

///

---

[4]It is unclear to the Court whether the parties represent that the auto insurance policy allowed for one or two (one amount for Ernest and one for Brad) payouts of $25,000. This issue, however, is not relevant for the purposes of the disposition of this Motion.

SFA maintains that it did not consent to the settlement, stipulated judgments, or the assignment of rights that Brad and Ernest entered into with Plaintiffs. Rather, Defendant cites to several portions of the insurance policy which prohibited Brad and Ernest from entering into the settlement agreement:

> **Reporting a Claim – Insured's Duties**
> **5.** **Insured's Duty to Co-operate with us**
> Insured shall co-operate with us and, when asked, assist us in:
> (a) making settlements . . .
> The insured shall not, except at his or her own cost, voluntarily,
> (a) make any payment or assume any obligation to others . . .
>
> **Conditions**
> **2.** **Suits Against Us.**
> There is no right of action against us:
> (a) until all the terms of this policy have been met, and
> (b) under the liability coverage, until the amount of damages an insured is legally liable to pay has been finally determined by
> (1) judgment after actual trial and appeal, if any; or
> (2) agreement between the insured, the claimant, and us.

## C.    The Present Action

Hansen and LeFevre filed this lawsuit on August 26, 2009, alleging breach of contract, contractual and/or tortious breach of the implied covenant of good faith and fair dealing, violation of the Nevada Unfair Claims Practices Act, and declaratory relief against SFA and SFF based upon the stipulated judgments and assignment of rights. Defendant SFA now moves for summary judgment on all claims asserted against it.[5]

SFA argues that the assignment of rights violated the Aguilars' insurance contract and is therefore void. Plaintiffs counter that summary judgment is inappropriate because SFA failed to adequately defend the Aguilars as required by the insurance contract, constituting a material breach of the insurance contract. Plaintiffs argue that therefore, even if the Aguilars subsequently breached the contract through the settlement and

---

[5]Defendant SFF has also moved for summary judgment. It filed two separate motions for summary judgment. (Dkt. nos. 20, 102.) The Court granted SFF's motion for summary judgment regarding Plaintiffs' claims against the insurer assigned to them by Brad Aguilar. (Dkt. no. 101.) SFF's motion for summary judgment regarding Plaintiffs' claims against the insurer assigned to them by Ernest Aguilar (dkt. no. 102) remains pending before the Court.

1   assignment of rights, SFA's prior material breach terminated the Aguilars' obligations

2   under the insurance contract.

3   **II.    LEGAL STANDARD**

4          The purpose of summary judgment is to avoid unnecessary trials when there is no

5   dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

6   F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings,

7   the discovery and disclosure materials on file, and any affidavits "show there is no

8   genuine issue as to any material fact and that the movant is entitled to judgment as a

9   matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine"

10  if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

11  the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

12  under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

13  Where reasonable minds could differ on the material facts at issue, however, summary

14  judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

15  1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise

16  a genuine issue of material fact is enough 'to require a jury or judge to resolve the

17  parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

18  902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89

19  (1968)). In evaluating a summary judgment motion, a court views all facts and draws all

20  inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v.

21  Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

22         The moving party bears the burden of showing that there are no genuine issues

23  of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

24  order to carry its burden of production, the moving party must either produce evidence

25  negating an essential element of the nonmoving party's claim or defense or show that

26  the nonmoving party does not have enough evidence of an essential element to carry its

27  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

28  F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's

1   requirements, the burden shifts to the party resisting the motion to "set forth specific

2   facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The

3   nonmoving party "may not rely on denials in the pleadings but must produce specific

4   evidence, through affidavits or admissible discovery material, to show that the dispute

5   exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

6   more than simply show that there is some metaphysical doubt as to the material facts."

7   *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

8   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

9   insufficient." *Anderson*, 477 U.S. at 252.

10

11   **III.   WHETHER STATE FARM AUTO BREACHED ITS OBLIGATIONS UNDER THE
     INSURANCE AGREEMENT**

12   Ordinarily, "the insured [must] . . . cooperate with the insurer. . . . He may not

13   settle with the claimant without breaching the cooperation clause in the policy." *United*

14   *Servs. Auto. Ass'n v. Morris,* 741 P.2d 246, 250 (Ariz. 1987) (en banc) (citations

15   omitted). However, "[a]ny breach . . . of [the insurer's] duties deprives the insured of the

16   security that he has purchased because the breach leaves him exposed to personal

17   judgment and damage which . . . may exceed the policy limits. Accordingly, when such

18   a breach occurs, the insured is generally held to be freed from his obligations under the

19   cooperation clause." *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 256 (9th Cir. 1991)

20   (citation omitted; brackets in original).

21   Plaintiffs argue that SFA materially breached the insurance contract and therefore

22   any claims by SFA that the Aguilars breached the cooperation clause or other terms of

23   the contract contract – which would preclude recovery by Plaintiffs – fail.[6]

24   ///

25

26   _____

27   [6]SFA acknowledges that insurers who fail to defend their insureds may enter into
     pre-judgment settlement agreements with third-parties and assign their rights to sue the
28   insurer for bad faith. (Dkt. no. 40 at 23.) However, SFA disputes that it breached its
     duty to defend here.

1    Plaintiffs assert that SFA breached its contractual duty to defend by (1) pursuing a
2    case strategy that the Aguilars did not agree with; (2) not providing independent counsel
3    when a conflict of interest arose; (3) rejecting the policy limits demand; and (4) failing to
4    hire an accident reconstructionist on the case. (Dkt. no. 54 at 12.)  Only arguments one
5    and two contain merit.  SFA did not reject the policy demand – rather, all parties agree
6    that at the July 10, 2006, settlement negotiations, SFA accepted the policy limits
7    demand by offering Hansen, Grill, and LeFevre a total of $50,000.  And Plaintiffs do not
8    articulate how SFA's failure to hire an accident reconstructionist violates the terms of the
9    agreement.

10        **A.    Defense Strategy**

11    Plaintiffs argue that SFA breached its duty to defend by pursuing a theory of the
12    case that was adverse to the Aguilars' interests.  According to Plaintiffs, SFA and SFF
13    had a joint tactic of arguing that Plaintiffs' injuries resulted from an auto accident, and
14    that this precluded the Aguilars (or their assignees) from obtaining coverage under the
15    $100,000 SFF homeowner's insurance policy.  (Dkt. no. 54 at 16.)

16    "The right and duty to defend affords an insurer the right to control the defense."
17    *Carolina Cas. Ins. Co. v. Bolling, Walter & Gawthrop*, No. S-04-2445FCDPAN, 2005 WL
18    1367096, at *7 (E.D. Cal. May 31, 2005) *aff'd sub nom. Carolina Cas. Ins. Co. v. Bolling
19    Walter & Gawthrop*, 244 F. App'x 762 (9th Cir. 2007) (citing *Safeco Ins. Co. v. Sup.
20    Court*, 71 Cal. App. 4th 782, 787 (1999) ("When the insurer provides a defense to its
21    insured, the insured has no right to interfere with the insurer's control of the defense . . .
22    .").  For this reason, even if the Aguilars disagreed with Defendants' litigation tactics,
23    SFA did not breach its contractual obligation to defend the Aguilars.

24    ///
25    ///
26    ///
27    ///
28    ///

**B. Insured's Right to Independent Counsel**

Absent a conflict of interest, the insurer's right to select counsel is encompassed by its contractual right and duty to defend its client.[7]

Plaintiffs cite to *Northern Insurance Co. of New York v. Allied Mutual Insurance Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992) for the proposition that an insurer is required to provide independent counsel for its insured when a conflict of interest between the two arises. This is often referred to as the *Cumis* requirement,[8] and is codified at Cal. Civ. Code § 2860(a).

Here, the parties agree that SFA had a contractual obligation to defend the Aguilars. The auto insurance policy reads:

> We [State Farm Auto] will defend any suit against an *insured* for such damages with attorneys chosen and paid by us.

(Dkt. no. 41 at 59; emphasis in original).

The parties disagree, however, about (1) whether that duty to defend encompasses appointment of independent *Cumis* counsel under Nevada law, and (2) whether the *Cumis* requirement, if applicable in Nevada, was triggered in this case.

#### 1. The Requirement of Independent Counsel

##### a. Nevada has not expressly adopted or rejected the requirement.

The parties dispute whether the *Cumis* requirement applies in Nevada. Defendants explain that "[t]he *Cumis* decision was handed down in 1984. California Civil Code § 2860 was adopted in 1987. In the nearly 30 years since the *Cumis* decision, neither the Nevada Supreme Court nor the federal district courts sitting in Nevada ha[ve] adopted or applied the *Cumis* requirement to insureds in Nevada." (Dkt. no. 164 at 12.)

---

[7]Michael M. Marick, Karen M. Dixon, *The Insurer's Contract "Right" to Defend the "Tripartite" Relationship Reconsidered*, 39 Tort Trial & Ins. Prac. L.J. 1119, 1119-1120 (2004).

[8]Its namesake case is *San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 364 (1984).

1    It is clear that Defendant is correct that the Nevada Supreme Court has not

2    expressly adopted or applied the *Cumis* holding, nor has the legislature enacted a

3    statute similar to Cal. Civ. Code § 2860. However, SFA's argument is at odds with the

4    Nevada courts' tradition of looking to California law where Nevada law is silent. *See*

5    *Commercial Standard Ins. Co. v. Tab Constr., Inc.*, 583 P.2d 449, 451 (Nev.1978);

6    *Selfaison v. First Nat. Bank of Ariz.*, No.09-CV-01918, 2011 WL 742212, at *2 (D. Nev.

7    Feb. 24, 2011); *Miller v. Skogg*, No. 2:10-CV-01121, 2011 WL 383948, at *3 (D. Nev.

8    Feb. 3, 2011).

9    Although Nevada courts have not expressly adopted the *Cumis* requirement, the

10   logic of a 2007 Nevada Supreme Court decision, *Nevada Yellow Cab Corp. v. Eighth*

11   *Judicial Dist. Court ex. rel.*, 152 P.3d 737, 742-43 (Nev. 2007), is in accord with the

12   reasoning underlying *Cumis*. In *Yellow Cab*, the Court held that counsel previously

13   retained by the insurer to defend a policyholder was disqualified from subsequently

14   representing the policyholder in a bad faith claim against the insurer. *Id.* at 743.

15   *Yellow Cab*'s reasoning supports the concept that when a conflict of interest

16   between the insurer and the insured arises, it is inappropriate for a single attorney to

17   represent both. *See* 152 P.3d at 741. The *Yellow Cab* Court adopted what it deemed to

18   be the "majority" rule that in the absence of a conflict between the insurer and the

19   insured, "counsel represents both the insured and insurer." 152 P.3d at 742. In

20   upholding the trial court's disqualification, the Court held that:

21       while the insured is the primary client, counsel generally learns confidential
         information from both the insured and the insurer and thus owes both of
22       them a duty to maintain this confidentiality; and, since counsel generally
         offers legal advice to both the insured and the insurer, counsel owes a duty
23       of care to both. Finally, as most states, including Nevada, have a rule that
         permits joint representation when no actual conflict is present, courts that
24       have adopted a dual-representation principle in insurance defense cases
         reason that joint representation is permissible as long as any conflict
25       remains speculative.

26   *Yellow Cab*, 152 P.3d at 741 (footnotes omitted). The *Yellow Cab* Court also noted that

27   "[o]ne purpose of disqualification is to prevent disclosure of confidential information that

28   could be used to a former client's advantage." *Id.* at 743. That is, the attorney there had

10

1   previously been privy to the insurer's confidential information, and could use that
2   information to the insured's advantage.

3        Therefore, both *Yellow Cab's* holding and its reasoning support the conclusion
4   that Nevada law requires the appointment of independent counsel when a conflict of
5   interest arises. The Nevada Supreme Court's determination that an attorney cannot
6   represent an insured against its former insurer in a later conflict means the Court would
7   similarly prohibit a single attorney to represent both the insured and the insurer in a case
8   when a conflict arises.   Moreover, the Court (1) recognized that defense counsel
9   represents both the insurer and the insured in the absence of conflict; (2) recognized
10  that a conflict of interest can exist between an insured and insurer; and (3) held by
11  negative implication that when such a conflict exists in more than hypothetical form, the
12  parties must have separate and independent counsel ("dual-representation . . . is
13  permissible as long as any conflict remains speculative"). *Yellow Cab*, 152 P.2d at 741,
14  743.

15       For these reasons, and for the reasons articulated below, Nevada law requires
16  that independent *Cumis* counsel must be appointed when a conflict of interest arises
17  between the insured and insurer.

18                   **b.    The majority of courts apply a *Cumis*-type duty**

19       California's requirement for independent counsel when an insurer and insured are
20  in conflict is the majority rule.[9]  Courts often apply a *Cumis*-type requirement as follows:

21

22       [9]*See Federal Ins. Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1228 (D. Mich. 1990)
    (stating "*Cumis* is representative of a growing body of case law which would give the
23  insured an absolute right to choose counsel where a conflict exists"); *Moeller v. Am.
    Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996) (noting that "other
24  jurisdictions have generally held that in such a situation [defending under a reservation
    of rights], not only must the insured be given the opportunity to select his own counsel to
25  defend the claim, the carrier must also pay the legal fees reasonably incurred in the
    defense"); *Union Ins. Co. v. Knife Co.*, 902 F. Supp. 877, 880 (W.D. Ark. 1995) (stating
26  "[d]ue to this [coverage] conflict of interest . . . the insurer must give up control of the
    litigation and retain an independent counsel for the insured"); *CHI of Alaska v.
27  Employers Reins. Corp.*, 844 P.2d 1113, 1121 (Alaska 1993) (concluding that "the
    insured should have the right to select independent counsel" subject to the "implied
28  covenant of good faith and fair dealing"); *Village of Lombard v. Intergovernmental Risk*
    (fn. cont..

A majority of courts remedy the conflict attendant with defending subject to a reservation of rights by requiring the insurer to pay the reasonable expenses of independent counsel. In reaching this conclusion, courts generally engage in the following analysis.

The attorney retained by the insurer to defend the insured serves two clients, the insurer and insured. This premise is often referred to as the "dual client doctrine." When the insurer elects to defend subject to a reservation of rights, the interests of retained counsel's clients become adverse. The insured will work toward preserving indemnity whereas the insurer focuses on establishing non-coverage.

The conflicting interests of retained counsel's two clients makes ethical representation of both difficult if not impossible. Courts identify the following potential problem areas: First, retained counsel may become aware of information damaging to a client through confidential communication with the other client. Second, retained counsel potentially could manipulate the trial strategy to benefit the interests of one client to the detriment of the other. For example, when seeking special verdicts, retained counsel will be responsible for framing jury questions, the answers to which, in many cases, will determine coverage/non-coverage.

When faced with a decision that compromises the interests of one client over the other, courts in the majority presuppose that defense counsel will favor the insurer over the insured. Acknowledging that "no man can serve two masters," the ethical prohibition against representation of two clients with conflicting, inconsistent, diverse or otherwise discordant' interests, and the insurer's duty to defend, courts in the majority conclude that where a conflict of interest arises out of the insurer's reservation of rights to deny coverage, the insurer must pay for the reasonable costs of the insured's independent counsel.

Allison M. Mizuo, *Finley v. Home Insurance Co.: Hawai'i's Answer to the Troubling Tripartite Problem*, 22 U. Haw. L. Rev. 675, 680-82 (2000).

### c. Minority approach

Not all jurisdictions require insurance companies to provide policyholders with independent counsel when a conflict arises between the insurer and its client. *See, e.g., Finley v. Home Insurance Co.*, 975 P.2d 1145, 1151-52 (Haw. 1998) ("[t]here is no consensus on this issue nationwide . . . we are convinced that the best result is to refrain

(...fn. cont.)
*Mgmt. Agency*, 681 N.E.2d 88, 94 (Ill. 1997) (holding that the insured can select independent counsel except where the insurer and insured contractually agree to limit scope of the defense and liability obligations); *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 854 (Md. App. 1975) (requiring the insurer to inform the insured of the conflict and provide the insured with the option of accepting counsel selected by the insurer or selecting independent counsel whose reasonable expenses will be paid by the insurer).

1   from interfering with the insurer's contractual right to select counsel and leave the
2   resolution of the conflict to the integrity of retained defense counsel.")

3          In fact, the Third Restatement of the Law Governing Lawyers states that "[i]t is
4   clear in an insurance situation that a lawyer designated to defend the insured has a
5   client-lawyer relationship with the insured.  The insurer is not, simply by the fact that it
6   designates the lawyer, a client of the lawyer."  Restatement (Third) of Law Governing
7   Lawyers § 134 (2000), comment f.

8          Courts following the minority approach reason that a conflict of interest between
9   the insured and insurer does not require the appointment of independent counsel
10  because (1) attorneys owe a duty of loyalty to the insured, not the insurer, and (2)
11  external mechanisms such as malpractice lawsuits or ethical sanctions disincentivize a
12  lawyer placing the insurer's interests above the insured.  *See, e.g., Twin City Fire Ins.*
13  *Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 373 (4th Cir. 2005) ("As
14  part of exercising the lawyer's professional judgment, an attorney in South Carolina who
15  represents an insured owes the insured a duty of loyalty and cannot, for example,
16  communicate information detrimental to the insured to the insurance company. . . . a
17  violation of these rules could lead to sanctions such as suspension, public reprimand, or
18  disbarment. . . . These possibilities, coupled with the threat of bad faith actions or
19  malpractice actions if a lawyer violates these rules, provide strong external incentives for
20  attorneys to comply with their ethical obligations.").

21          **d.     The *Cumis* requirement is in accord with Nevada law.**

22          As explained *supra*, the *Cumis* requirement is in accord with Nevada law for three
23  primary reasons.  First, in *Yellow Cab*, the Nevada Supreme Court held that an attorney
24  hired by the insurer to defend its client represents both the insurer and the insured
25  absent a conflict of interest.   152 P.3d at 742.  This establishes that the minority
26  approach – when a conflict of interest arises between the insured and the insurer, the
27  appointed attorney only owes a duty of loyalty to the insured – is unworkable in Nevada.
28  More importantly, the *Yellow Cab* Court's determination that "joint representation is

13

permissible as long as any conflict remains speculative" means that joint representation is *impermissible* when a conflict of interest is real. 152 P.3d at 74. So the insured must have independent counsel in such a scenario.

Second, although Nevada has not expressly adopted a *Cumis* requirement, Defendants are incorrect that Nevada's silence indicates rejection. Rather, because Nevada courts routinely look to California law where Nevada law is silent, it is likely that Nevada courts simply found no need to expressly adopt a *Cumis* requirement. It is also likely that this issue has not been raised before the Nevada Supreme court.

Finally, requiring *Cumis* counsel is the majority rule, and the Court is persuaded by the reasoning of the majority view – that the inherent tension between the interests represented in the insurer-insured relationship requires the insurer to provide its policyholder with independent counsel when a conflict of interest arises. As articulated by the Eighth Circuit,

> it is impossible for one attorney to adequately and fairly represent two parties in litigation in the face of the real conflict of interest which existed here. Even the most optimistic view of human nature requires us to realize that an attorney employed by an insurance company will slant his efforts, perhaps unconsciously, in the interests of his real client-the one who is paying his fee and from whom he hopes to receive future business-the insurance company.

*United States Fidelity & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 938 n.5 (8th Cir. 1978).

### 3. Whether the Aguilars were entitled to independent counsel

SFA asserts that if the reservation of rights created a conflict of interest, the conflict was merely theoretical and lasted only two months. This is because two months after SFA agreed to defend Brad, Brad gave deposition testimony admitting negligent actions and denying intentional conduct. Therefore, according to SFA, the parties' interests were aligned: Brad admitted to negligence, and SFA agreed to cover his negligent conduct under the policy.

Plaintiffs counter that the Aguilars and SFA had several conflicting interests regarding the disposition of the state court case. First, the reservation of rights

1    constituted a conflict of interest because Hansen, Grill, and Lefevre sued the Aguilars for
2    intentional conduct and sought punitive damages, both of which SFA asserted that it
3    would likely not cover in its reservation of rights letter.[10]  Second, Plaintiffs assert that
4    SFA's $7,500 offer during the December 15, 2005 settlement negotiations constituted a
5    conflict of interest, presumably because if SFA had offered more or worked harder
6    towards a settlement, the case would have settled, which was Brad's desire.  Finally,
7    Plaintiffs assert that SFA's theory of the case–that Brad was liable only for acts arising
8    from his use of a motor vehicle, and not for acts unrelated to his conduct in the car–
9    precluded recovery under the $100,000 SFF homeowner's policy.  This in turn meant
10   that the Aguilars would only be able to recover $25,000 worth of any judgment from their
11   insurer; the rest would have to come from their personal funds.  Plaintiffs claim that this
12   scheme to "low-ball" the Aguilars was adverse to their interests and presented a conflict
13   justifying the appointment of *Cumis* counsel.

14                        **a.      Reservation of rights**

15          "When an insurer defends under a reservation of rights . . . a conflict of interest
16   may arise."  *Nat. Union Fire Ins. Co. v. Hilton Hotels Corp.*, No. 90-2189, 1991 WL
17   405182, at *3 (N.D. Cal. May 6, 1991); *Cont'l Cas.*, 265 F.R.D. at 513.  This is because
18   when an insured agrees to represent an insurer under a reservation of rights, it is often
19   the case that the insurer and insured have opposing interests.

20

21

22          [10]Another example of SFA's alleged breach proffered by Plaintiffs was SFA's
23   decision to file a declaratory relief action based upon its view that intentional acts are not
     covered under the car insurance policy. It is true that because of an insurance
     company's adverse interest to the insured, insurance companies often file a declaratory
24   judgment to determine coverage and the insurer's obligation to defend the insured.
     Therefore, it may be that SFA's decision to file a declaratory relief action demonstrates
25   that a conflict of interest existed between SFA and the Aguilars.  The declaratory relief
     action was premised on SFA's view that any allegedly intentional acts in the state law
26   case were not covered by the car insurance policy. Yet this conflict of interest, if it in fact
     constitutes a conflict of interest, is the same conflict presented by the reservation of
27   rights letter. Therefore, SFA's declaratory judgment action is one fact the Court
     considers in determining whether a conflict of interest between SFA and the Aguilars
28   existed.

                                          15

Notably, while some courts hold that a reservation of rights letter creates a *per se* conflict of interest,[11] others consider the question on a case-by-case basis.[12] *Twin City*, 433 F.3d at 370-71.

The *Twin City* court explained that courts applying the *per se* rule identify three primary conflicts created by a reservation of rights letter. 433 F.3d at 370-71. First, "if an insurance company contends that a particular loss will not be covered under the policy, the lawyer hired by the insurance company may offer only a token defense of the potentially non-covered claim or conduct the defense in such a manner as to make the likelihood of the plaintiff's verdict greater on the non-covered claim." *Id.* at 371. Second, "the lawyer hired by the insurance company might gain access to confidential information

---

[11]As explained in *Twin City*, 433 F.3d at 371, these cases include:

[*CHI of Alaska*, 844 P.2d at 1118]; *Union Ins. Co. v. Knife Co.*, Inc., 902 F. Supp. 877, 880 (W.D. Ark. 1995) (predicting Arkansas law); *Kroll & Tract v. Paris & Paris*, 72 Cal. App. 4th 1537 (1999) (citing Cal. Civ. Code § 2860); *Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill. App. 3d 134, 137 (1985) (finding conflict when punitive damages not covered by policy); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 788 N.E. 2d 522, 539 (2003); *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 625 (8th Cir.1981) (predicting Missouri law); *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So.2d 1062, 1069 (Miss. 1996); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir. 1983) (applying Texas law).

[12]As explained in *Twin City*, 433 F.3d at 371, these cases include:

*L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1304 (Ala. 1987); *Travelers Indem. Co. of Ill. v. Royal Oak Enter.*, Inc., 344 F. Supp. 2d 1358, 1374 (M.D. Fla. 2004) (predicting Florida law); *Armstrong Cleaners, Inc. v. Erie Ins. Exch.*, 364 F. Supp. 2d 797, 816 (S.D. Ind. 2005) (applying Indiana law); *Trinity Universal Ins. Co. v. Stevens Forestry Serv., Inc.*, 335 F.3d 353, 356 (5th Cir. 2003) (applying Louisiana law); *Finley*, 975 P.2d at 1150-55; *Cent. Mich. Bd. of Trs. v. Employers Reins. Corp.*, 117 F. Supp. 2d 627, 634-35 (E.D. Mich. 2000) (applying Michigan law); [*X-Rite*, 748 F. Supp. at 1229] (same); *Driggs Corp. v. Pa. Mfrs. Ass'n Ins. Co.*, 3 F. Supp. 2d 657, 659 (D. Md. 1998) (applying Maryland law); *Nisson v. Am. Home Assur. Co.*, 917 P.2d 488, 490 (Okla. Civ. App. 1996); *HK Sys., Inc. v. Admiral Ins. Co.*, No. 03 C 0795, 2005 WL 1563340, at *8-10 (E.D. Wis. June 27, 2005) (applying Wisconsin law); *Tank v. State Farm Fire & Cas. Co.*, 105 Wash. 2d 381, 715 P.2d 1133, 1137-38 (1986) (holding that potential conflict created by reservation of rights mandates enhanced obligations of good faith for attorneys whose fees are covered by insurer).

1 during the defense that the lawyer might provide to the insurance company to contest

2 coverage." *Id.* This concern is closely related to the concern articulated in *Yellow Cab* –

3 that the lawyer who had represented both the insurer and the insured might use the

4 insurer's confidential information against it in the later suit for bad faith. 152 P.2d at 743.

5 A third concern raised by a reservation of rights letter described in *Twin City* is that "the

6 lawyer retained to defend the insured might tend to favor the insurance company over

7 the insured due to a desire to receive future legal work from the insurance company."

8 433 F.3d at 371.

9        The Court determines that a reservation of rights letter can create a conflict of

10 interest, but that Nevada courts would determine the question on a case by case basis.

11 This is because insurers almost always defend under a reservation of rights, and

12 defending under a reservation of rights always creates at least a theoretical conflict of

13 interest. *See Twin City*, 433 F.3d at 371. However, the *Yellow Cab* Court left room for

14 dual representation when a conflict of interest is merely speculative. 152 P.3d at 741.

15 So a *per se* rule would not comport with Nevada law. Accordingly, whether or not an

16 insurer's reservation of rights creates a conflict of interest must be determined by looking

17 to the particular facts of each case. *See id.*

18        In this case, SFA's decision to defend the Aguilars under a reservation of rights

19 created a conflict of interest. Although Brad admitted to negligent action and denied

20 intentional conduct, SFA is incorrect that this meant any conflict of interest was merely

21 hypothetical. The plaintiffs in the state court case sued Brad, and later Ernest, for both

22 negligent *and* intentional conduct. (*See* dkt. no. 43, ex. 1.) After Brad denied intentional

23 wrongdoing, the plaintiffs did not amend their complaint to drop any allegations

24 regarding intentional conduct. (*See id.*) Rather, the plaintiffs continued to pursue claims

25 for negligent and intentional conduct against the Aguilars. As such, the conflict of

26 interest between the Aguilars and SFA was more than the hypothetical conflict that

27 arises with every reservation of rights letter. It was a real conflict because the plaintiffs

28 in the state law case alleged the Aguilars were liable for intentional conduct and sought

punitive damages, and SFA reserved the right to deny coverage for those claims and damages. Therefore, the dangers of dual representation articulated in *Twin City* existed. The possibility that Mr. Clayton and the HJC attorneys would only make nominal efforts to defend against the intentional tort claims and punitive damages existed. *See Twin City*, 422 F.3d at 371. And the concern that the counsel from HJC would gain access to confidential information which could later be used against the Aguilars if SFA contested coverage existed.[13] *Id.*

For the foregoing reasons, there was a conflict of interest between the Aguilars and SFA in the state court action. SFA's contractual duty to defend the Aguilars encompassed its obligation to provide the Aguilars with independent counsel.[14]

### b. Appointment of independent counsel

Notably, *Cumis* counsel requires the insurer, not the insured, to compensate the insured's independent attorney. SFA did not provide the Aguilars with independent counsel here. Therefore, neither the fact that SFA informed the Aguilars that they could retain private counsel in the reservation of rights letters nor the later appointment of personal attorney David Sampson suffices.[15] *See Emps. Ins. of Wausau v. Albert D.*

---

[13]This concern is ever-present in the tripartite attorney-insurer-insured relationship. It is present even when the conflict between the insurer and insured is merely hypothetical, and therefore on its own may not be reason for the appointment of *Cumis* counsel. However, here, where the parties' interests remained adverse throughout the litigation, and where Defendant filed a declaratory relief action to determine the scope of its coverage, the concern was heightened. The facts of this case demonstrate that there was a real threat that an attorney representing both SFA and the Aguilars might have the opportunity to use the Aguilars' confidential information against them on behalf of SFA in future litigation regarding coverage.

[14]Because the Court determines that the reservation of rights created a conflict of interest, it does not address Plaintiffs' other arguments *infra* in Part (III)(B)(3) regarding whether or not a conflict of interest existed between the Aguilars and SFA.

[15]The fact that Brad was separately represented by an attorney from Allstate also does not constitute *Cumis* counsel for this reason. SFA further asserts that the appointment of attorneys Sherrod and Winspar satisfies the *Cumis* requirement. But Sherrod and Winspar were appointed in 2008, well after the reservation of rights letters were issued to Brad and Ernest, and such appointment cannot satisfy the requirement. Moreover, the attorneys were appointed because a conflict existed between the two *insureds*, not the insurer and the insured. Accordingly, under *Yellow Cab*, Winspar (fn. cont..

1  *Seeno Const. Co.*, 692 F. Supp. 1150, 1153 (N.D. Cal. 1988) (discussing the *Cumis*

2  requirement: "where the insured has exercised its right to select independent counsel

3  *paid for by the insurer* because a conflict or potential conflict has arisen between the

4  insurer and the insured." (emphasis added)).

5  **IV.  CONCLUSION**

6       For the reasons stated above, Plaintiffs have demonstrated that SFA breached its

7  duty to defend under the insurance agreement by not providing the Aguilars with

8  independent counsel in the state court litigation.  This constituted a material breach of

9  the insurance agreement, and voided the Aguilars' duty to cooperate with SFA and their

10  other duties under the insurance agreement.  *See Lozier, supra*, 951 F.2d at 256.  As

11  such, SFA's argument that it is not liable because the August 2008 settlement and

12  stipulated judgment violate the terms of the Aguilars' insurance contract fails.

13       IT IS THEREFORE ORDERED that Defendant State Farm Auto's Motion for

14  Summary Judgment (dkt. no. 40) is DENIED.

15       DATED THIS 12th day of December 2012.

16

17

18  MIRANDA M. DU

19  UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27  *(...fn. cont.)*
represented SFA and Brad; Sherrod represented Ernest and SFA.  The two attorneys

28  were not *Cumis* counsel.

19

# EXHIBIT 5

# EXHIBIT 5



333 S. Wabash Ave.  Chicago  IL  60604

**Mitch Roberts**
*Claim Consultant*
*Telephone*   303-858-4124
              800-262-5303  x4124
*Facsimile*    312-260-6549
*E=mail: Mitchell.roberts@cna.com*

September 10, 2014

James Walsh
Walsh, Baker, Rosevar & Loomis
9468 Double R Blvd., Suite A
Reno, NV  89521

ALSO SENT BY E-MAIL: jwalsh@wbrl.net

Re:      Claim No.:            E2B10757
         Insured:              Port of Subs, Inc.
         Plaintiff:            Estate of Fermine Olgaldez
         Date of Loss:         8-3-2013
         Date of Notice:       12-19-2013
         Policy No.:           2099374922
         Policy Dates:         1-18-2013 / 1-18-2014
         Issuing Company:      National Fire Insurance Company of Hartford (NFIC)

Dear Mr. Walsh:

Thank you for your September 8, 2014 correspondence.

National Fire Insurance Company of Hartford (NFICH) agreed to provide Port of Subs a defense for all allegations brought in litigation filed by the Estate of Fermine Ogaldez against Port of Subs and its driver Richard Williams.

A reservation of rights was provided on the allegations of assault and battery, which are intentional actions allegedly committed by Mr. Williams, an off duty Port of Subs employee.  These causes of action stem from an automobile accident resulting in fatal injuries to plaintiff's estate.  The actions alleged committed by Mr. Williams arose out of his personal use of his vehicle and not for the benefit of Port of Subs.  This has been confirmed by both Mr. Williams and Port of Subs personnel.  If, facts exist that differ this understanding, please contact me immediately.

A cause of action for Intentional Infliction of Emotional Distress is also plead. By definition, this cause of action also seeks intentional type damages and if awarded, would not be indemnified under the policy. Punitive/exemplary damages are generally not covered by insurance policies, as they seek to punish an offender and public policy does not favor indemnification.

Coverage limits are $1,000,000 under the automobile policy and $10,000,000 under the umbrella policy. The policy listed in your letter 2099375018 was a general liability policy that does contain a $2,000,000 occurrence limit. The coverage form is SB300000C 04/2010, that has the following exclusion and provisions:

B.  Exclusions

1.  **Applicable To Business Liability Coverage**

This insurance does not apply to:

g.  **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)   An aircraft that is:

(a)  Hired, chartered, or loaned with a paid crew; but

(b)  Not owned by any insured;

(2)   A watercraft while ashore on premises you own or rent;

(3)   A watercraft you do not own that is:

(a)  Less than 51 feet long; and

(b)  Not being used to carry persons or property for a charge;

(4)   Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(5)   Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(6)   "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

(a)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(b)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

In the event there is a vicarious liability finding, this exclusion removes coverage for the entrustment of a vehicle to another including use or if legally found loaned to the insured.  For claims to falls under the Port of Sub policy, there must be a finding that Mr. Williams was in the course and scope

2

of his employment and under the direction of his employer.  The above exclusion removes coverage under the general liability policy, but not under the automobile policy assuming Mr. Williams was within the course and scope of his employment.

Please note the Other Insurance provision under form SB147082D 04/10:

H. Other Insurance

1.      If you have other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

2.      Business Liability Coverage is excess over:

a.  Any other insurance that insures for direct physical loss or damage; or

b.  Any other primary insurance available to you covering liability for damages arising out of the premises for which you have been added as an additional insured by attachment of an endorsement.

3.      When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

Since other, specific insurance applies, the automobile policy (and  then the umbrella policy) would be the proper policies if allegations are proven and Port of Subs must indemnify.

 Thank you for the copy you provided of the District Court's December 12, 2012 decision from *Hansen v. State Farm*. I have reviewed it and discussed it with coverage counsel and we respectfully disagree with your application of it here. The complaint in the Hansen case alleged facts that substantiated intentional misconduct by the parties including the involvement of criminal gangs.  In determining coverage for bodily injuries, we look at acts alleged or otherwise known, not causes of action pleaded, and nothing in the complaint against Mr. Williams and Port of Subs suggests that Mr. Williams intended to injure Mr. Ogdalez or was anything other than negligent.  Our investigation and that of the Reno Police Department have revealed no suggestion of any intent to injure Mr. Ogdalez or of any plausible motivation Mr. Williams could have had for doing so. The causes of action on which we have reserved rights contain no facts or anything else to support the bare allegations and legal conclusion that intentional torts were committed.  Under the circumstance, even were the Nevada Supreme Court to adopt the Cumis decision, the right to independent counsel would not be triggered here.

Not all reservations of rights create the kind of conflict that gives rise to the right to Cumis counsel.  Independent counsel is called for only when the way in which counsel conducts the defense of the insured could affect whether the outcome of the case, particularly if the way the lawyer defends the insured could affect whether the verdict against the insured is covered by the policy or not.  We see no way in which the way this case is handled by defense counsel could affect whether any verdict against Port of Subs is covered or not.

Port of Subs always has the right to engage counsel at its own expense to join in the representation, and we will cooperate fully with your personal counsel.  Advising that punitive/exemplary damages does not create a conflict in Nevada.

Port of Subs always has the right to engage counsel at its own expense to join in the representation.  We appreciate your position seeking independent counsel, but those issues have not been decided in Nevada.  Advising that punitive/exemplary damages are not covered does not create a conflict in any known jurisdiction.  Further, independent counsel requirements occur only when the defense can influence which cause of action a jury may ultimately select.

Based on the facts provided to us, the defense position is that Mr. Williams was not in the course and scope of his employment, and the accident fact proof fall squarely on Mr. Williams' counsel (provided by American Family).  The defense focus is that Mr. Williams was not in the course and scope of employment and Port of Subs has no liability. Unlike the case provided us, the driver will be represented by separate counsel, who undoubtedly will argue that any negligent actions of Mr. Williams were based in negligence and not intentionally caused.  The defense of Port of Subs will focus on activities by the driver that were outside the course and scope of employment.  Further defense is provided by an outside, independent law firm whose client is Port of Subs.

We appreciate the concerns raised, but NFICH does not feel independent counsel is warranted under this factual situation.

Sincerely,

Mitch Roberts
Claims Consultant
National Fire Insurance Company of Hartford
Continental Casualty Company

4